[Civ. No. 28109. Second Dist., Div. One. Nov. 5, 1964.]

BURR AND LADD, INC., et al., Plaintiffs, Cross-defendants and Appellants, v. PHYLLIS YELKIN MARLETT et al., Defendants, Cross-complainants and Respondents.

Trapp & Kirk and Daniel J. Kirk for Plaintiffs, Cross-defendants and Appellants.

James M. DeLoreto for Defendants, Cross-complainants and Respondents.

LILLIE, J.—Plaintiffs, who are building contractors and land developers, sued for specific performance of an agreement relating to the sale of property in Santa Maria where it was planned to construct a shopping center. By its judgment the trial court upheld the material denials and the affirmative defenses in defendants' answer; it also quieted Mrs. Marlett's title in the subject premises, as prayed for by way of cross-complaint, and awarded her damages for loss of rentals therefrom. Plaintiffs appeal from such adverse judgment.

The parties first met in December of 1959 at defendants' Inglewood home when plaintiffs inquired about leasing or buying Mrs. Marlett's Santa Maria property. Upon plaintiffs' representations that they could develop the area into a shopping center yielding large returns, defendants agreed to transfer the property to a corporation (later to be organized) in partial consideration of which she was to receive one-third of the company's stock. The following month, January of 1960, the parties, apparently without any outside assistance, prepared and executed an agreement outlining generally their mutual understandings discussed preliminarily the previous month. Thereafter the individual plaintiffs consulted their own attorney regarding the formation of plaintiff corporation. The same attorney also prepared for the signature of all parties a document entitled "Supplemental Agreement to Preincorporation Agreement" which makes reference to the January contract and declares that it is the parties' purpose to "restate and further define the rights and duties" therein set forth. Among numerous other provisions, this supple-

mental agreement provided that "[s]aid land shall be conveyed to the corporation free and clear of all encumbrances except non-delinquent taxes and easements of record, *and* with the exception of rights to oil, gas and other hydrocarbon substances." The agreement was signed by the parties on June 13.

Subsequently an escrow was opened. The escrow instructions, apparently prepared by plaintiffs or their attorney, read in pertinent part that "Deed is to recite 'Together with Grantor's interest in and to that certain Oil and Gas Lease recorded in book 395, page 296, Official Records of Santa Barbara County, California.' Seller will hand you for delivery to Buyer, Seller's copy of Oil and Gas Lease of record together with an assignment of same to Burr and Ladd, Inc., which documents are subject to Buyer's approval." This instruction was stricken by appropriate deletion marks and the initials of all parties appear in the margin. However, there was also this instruction (which was not deleted) : "Seller will cause to be handed you a document from the Signal Oil and Gas Company sufficient to enable the title company to show in their title policy that the owner of the subject property has the surface rights to the same to a depth of five hundred feet. Said document subject to the approval of the Buyer. . . ." In this latter connection, there was evidence that since May of 1947 Signal Oil and Gas had held an oil and gas lease on Mrs. Marlett's property and actually had a pumping rig for an active oil well on the parcel of land to be conveyed. In due time Mrs. Marlett obtained a quitclaim deed from Signal as provided in the instruction quoted above. She testified that the sole purpose of this deed was for the removal of the pump which would thus enable work to proceed on the shopping center.

Upon the close of the escrow (October 7, 1960), plaintiffs thereby became obligated to secure a "substantial" tenant within one year or reconvey the property. They entered into negotiations with Shell Oil Company for the construction of a service station. Although the individual plaintiffs by the terms of the June 1960 agreement had undertaken to use their "personal credit and the credit of any companies under their control to assist in obtaining the necessary loans for construction," the construction of the Shell service station was sought to be financed by borrowing money on the land conveyed to the corporation by Mrs. Marlett. The title company refused to issue a policy for the loan unless Mrs. Marlett and her rela-

tives quitclaimed their oil rights to a depth of 500 feet. Subsequently the title company indicated it would issue the necessary policy if Mrs. Marlett would quitclaim her 50 per cent interest in such oil rights. This she refused to do. More than one year having passed from the close of the escrow, defendants tendered back the stock they had received and demanded a reconveyance of the subject property. Plaintiffs declined to reconvey and then instituted the present action.

After allegations to the effect that plaintiffs had performed all the promises and covenants required of them under the contract, and specifically the acquisition of a long-term lease with Shell Oil Company, the complaint alleged that ''in order to complete performance of said agreements, it is necessary that the defendants convey to the plaintiff corporation all of their right, title and interest in and to the surface and subsurface to a depth of 500 feet below the surface of the premises described in said agreements'' in order to obtain necessary financing for the construction of rental buildings to be placed upon the premises. It is further alleged that defendants knew of the necessity for obtaining such surface and subsurface rights, and informed plaintiffs that they would so convey but had refused so to do.

As mentioned earlier, defendants interposed several affirmative defenses, among which was the allegation that ''[t]he written agreements contained in Exhibits A and B of said complaint are not certain enough for the granting of specific performance.'' The issue thus raised and to be decided was made a part of the joint pretrial statement: ''Whether the defendants promised plaintiffs that they would convey to plaintiff corporation whatever surface rights and sub-surface rights to a depth of 500 feet either one might have in all oil, gas, mineral and other hydrocarbon substances including the right of surface entry''; and ''[w]hether, as to the Exihibits referred to herein, as A and B, the terms are so uncertain as to preclude the remedy of specific performance.'' As also mentioned earlier, the trial court found (in addition to other findings adverse to plaintiffs) ''[t]hat the written agreements were too uncertain to grant the remedy of specific performance.''

Among plaintiffs' points on appeal is the claim that the findings of fact are lacking in clarity and therefore ambiguous. It is also contended that findings were not made on all material issues; in this latter connection, plaintiffs requested specific findings on certain issues (Code Civ. Proc., § 634) and they ask that the cause be remanded in view of the trial court's

failure to grant such request. While the above points are argued extensively, we are satisfied that they are not determinative of this appeal. ■ In *Mashon* v. *Haddock*, 190 Cal.App.2d 151, 167 [11 Cal.Rptr. 865], this court declared: "When findings are questioned, it is the duty of an appellate court to compare them with all the evidence in the case, to consider them as a whole, and to construe them liberally in support of the judgment." ■ Quoted thereafter was the following from *Burke* v. *Chrostowski*, 46 Cal.2d 444, 445 [296 P.2d 545]: " 'In determining this question (findings) it is well settled that "an appellate court must accept as true all evidence tending to establish the correctness of the finding [s] as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is . . . to be resolved in favor of the findings." [Citing cases.]' " In the light of the above rules, plaintiffs' criticism of the findings as drawn does not warrant a reversal.

■ In the *Mashon* case, as here, counsel for appellants likewise moved the court for special findings and it was argued that the denial of such motion was contrary to section 634, Code of Civil Procedure. To that argument the court had this to say: "We do not think this code section as amended changes in any respect the basic rules as to findings that we have set forth." (P. 167.) ■ Too, since the finding presently to be discussed supports the judgment, it becomes unnecessary to give attention to the sufficiency of the evidence to support the remaining findings. (*Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782].) We therefore pass to matters which more properly constitute the core of this controversy.

The trial court found that the contract as a whole was so uncertain as to preclude the remedy of specific performance; while other affirmative defenses were also sustained, we need only consider whether the above infirmity made the agreement unenforceable in equity. Section 3390, subdivision 5, Civil Code, includes among the obligations which cannot be enforced "An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." ■ A contract for the sale of real property will not be specifically enforced unless it not only contains all the material terms but also expresses each in a reasonably definite manner. (*Wood* v. *Anderson*, 199 Cal. 440, 444 [249 P. 862].) ■ "An indefinite contract cannot be enforced

because the courts cannot know to what the parties agreed. The meaning and intent of the parties must be placed beyond the bounds of mere conjecture.'' (12 Cal.Jur.2d, Contracts, § 107.) Obviously the clause by which plaintiffs as buyers agreed to construct rental buildings on the premises was an essential term of the contract. The same is true of the provisions for the financing thereof; it was part of the consideration to the defendants as sellers for their promise to sell, manifestly to better secure them in the payments of the benefits the agreement offered. A pertinent provision in the contract recites that plaintiffs will ''assist'' in obtaining necessary loans for construction. If it is thereby meant that defendants, as persons whom plaintiffs will ''assist,'' became obligated to execute necessary conveyances in the form of quitclaim deeds to their oil rights, we are confronted by defendants' refusal so to do. Their refusal finds valid support in the deleted portion of the escrow instructions which, significantly enough, were either drafted or supervised by plaintiffs or their attorney. The rule is settled that in case of uncertainty in a contract it is construed most strongly against the party who caused the uncertainty to exist—the party drafting the instrument. (*Estate of Rule,* 25 Cal.2d 1, 13 [152 P.2d 1003, 155 A.L.R. 1319].)

 In their opening trial brief, filed for consideration upon the conclusion of testimony, plaintiffs urge that '' [t]he only possible area of uncertainty suggested by the defendants was with relation to the surface and sub-surface rights. Plaintiff [*sic*] submits, however, that this is hardly tenable, when you consider not only the parol evidence of the plaintiffs, Burr and Ladd in this connection, but also the escrow instructions of July 1, 1960 (plaintiff's Ex. 3 in evidence) at lines 56 to 59 which were signed by the defendant Phyllis Y. Marlett.'' (The instructions thus covered require the seller to obtain a document, referred to earlier, from Signal Oil ''sufficient to enable the title company to show in their title policy that the owner . . . has the surface rights . . . to a depth of five hundred feet . . . .'') The trial brief continues: ''All the court needs to do in this case is order the defendants to convey the surface and sub-surface rights to a depth of 500 feet and the rights to be conveyed are already spelled out in the quitclaim deed . . . previously submitted to defendants and which plaintiffs claim defendant Phyllis Marlett had agreed at one time to convey.'' But the quitclaim deed, as already noted, required her to quitclaim her interest in

oil, gas and hydrocarbon substances to a depth of 500 feet; on the other hand the agreement of June 1960 and the escrow instructions expressly excepted the seller's oil rights. Faced with these circumstances, the trial court properly received parol testimony, pro and con, to clarify the above impasse. Having done so, it determined that plaintiffs had not met their burden of showing that the contract sought to be enforced was clear and free from uncertainty. Under the circumstances, as an appellate court we "must view the evidence most favorable to the successful party in the trial court." (*Roberts* v. *Lebrain,* 113 Cal.App.2d 712, 716 [248 P.2d 810].) We cannot, therefore, disturb the pertinent finding which is a complete defense to the relief here sought.

No other points are raised which require any discussion. The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.