[No. B092041. Second Dist., Div. Five. May 5, 1997.]

DANIEL POWERS et al., Plaintiffs and Respondents, v.
DICKSON, CARLSON & CAMPILLO et al., Defendants and Appellants.

COUNSEL

Archbald & Spray, Kenneth L. Moes and Karen Burgett for Defendants and Appellants.

Valensi, Rose & Magaram, M. Laurie Murphy and Kenneth L. Heisz for Plaintiffs and Respondents.

OPINION

GRIGNON, J.—Defendants and appellants Dickson, Carlson & Campillo; Maguire, Toghia & Orbach; and Nicholas J. Toghia appeal from the denial

of their petition to compel arbitration in this legal malpractice action brought by plaintiffs and respondents Daniel and Fala Powers.[1] We conclude that the arbitration provisions of the initial retainer agreement and its amendment are enforceable and applicable to legal malpractice actions. We reverse and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

In 1992, the Powers purchased a $2 million luxury home in the Pacific Palisades. They were represented in the negotiations by Attorney Roy Glickman of the law firm of Narvid, Glickman, Scott & Frangie (collectively Glickman). The Powers signed a written purchase agreement with the seller/developer of the property. This written purchase agreement contained an arbitration provision. After moving into the home, the Powers became aware of construction defects. They retained Attorney Glickman to represent them in connection with the resolution of these construction defect disputes with the seller/developer. In November 1992, Attorney Glickman demanded arbitration on behalf of the Powers and the matter proceeded to arbitration.

In March 1993, the Powers became dissatisfied with both the pace of the arbitration and Attorney Glickman. They contacted Nicholas J. Toghia with the law firm of Maguire, Toghia & Orbach (MTO). The Powers retained Attorney Toghia to represent them in the construction defects arbitration on an hourly fee basis. The Powers met with Attorney Toghia at his office on March 3, 1993, and signed a four-page "Attorney Retainer and Fee Agreement." The agreement contained 12 numbered paragraphs: scope of agreement; duties of attorney and client; attorney's billing and case management; costs and expenses; attorney's statements; attorney's lien; professional liability coverage; termination or withdrawal; termination or conclusion; binding arbitration; authority of client; and client's deposit. Numbered paragraph 10, concerning arbitration, provided in full as follows:

"10. BINDING ARBITRATION. [¶] The parties hereto agree that any dispute relating to ATTORNEY's fees under this CONTRACT shall be submitted to binding arbitration before the Los Angeles County Bar Association pursuant to California Business and Professions Code Section 6200, et seq., or, should that organization decline to arbitrate the dispute, before the State Bar of California pursuant to California Business and Professions Code Section 6200, et seq.

"Any other dispute (other than ATTORNEY's fees) between the parties hereto arising out of or relating to this CONTRACT or ATTORNEY's professional services rendered to or for CLIENT, shall be resolved by binding

---

[1]An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).)

arbitration before the American Arbitration Association in Los Angeles, California, in accordance with the Commercial Rules of the American Arbitration Association prevailing at the time of the arbitration."

In July 1993, Attorney Toghia moved from MTO to the law firm of Dickson, Carlson & Campillo (DCC). In August 1993, the Powers became concerned about their financial arrangements with Attorney Toghia, which were becoming expensive. On September 9, 1993, the Powers and Attorney Toghia modified their financial arrangements by entering into a "First Amendment to Attorney Retainer and Fee Agreement," which changed their fee arrangement from hourly to flat fee. This amendment was four pages long and included an introduction, a paragraph detailing the background and description of the pending arbitration case, and seven numbered paragraphs: conditions; scope of services; clients' duties; fees; no representations; arbitration; and affirmation of the original attorney retainer and fee agreement. Numbered paragraph 6, concerning arbitration, provided in full as follows:

"6. ARBITRATION. If any dispute arises out of, or related to, a claimed breach of this agreement, the professional services rendered by Toghia, or Clients' failure to pay fees for professional services and other expenses specified, or any other disagreement of any nature, type or description regardless of the facts or the legal theories which may be involved, such dispute shall be resolved by arbitration before the American Arbitration Association by a single arbitrator in accordance with the Commercial Rules of the American Arbitration [Association] in effect [at] the time the proceeding is initiated. The hearings shall be held in the Los Angeles offices of the American Arbitration Association and each side shall bear his/their own costs and attorney fees."

The arbitration of the construction defects dispute was ultimately suspended, because neither the Powers nor the seller/developer had initialed, as required, the written purchase agreement's general arbitration provision.

On January 3, 1995, the Powers sued Attorney Glickman, Attorney Toghia and their respective law firms for legal malpractice. The Powers alleged Attorney Glickman had been negligent in negotiating and drafting the purchase agreement. The Powers further alleged that Attorneys Glickman and Toghia had both been negligent in prosecuting the Powers' construction defects claim in an arbitration proceeding, when the arbitration provision in the purchase agreement was inapplicable. Finally, the Powers alleged that Attorney Toghia had caused them to incur great unnecessary expense in prosecuting the arbitration proceeding.

On February 7, 1995, Attorney Toghia and his law firms petitioned the trial court to compel arbitration of the Powers' legal malpractice action

against them. On February 21, 1995, Glickman answered the complaint. On March 1, 1995, the Powers opposed Attorney Toghia's motion to compel arbitration. The Powers' opposition contended that the arbitration provisions in the two retainer agreements were not enforceable because the Powers had not been advised by Attorney Toghia that they were giving up their right to a jury trial in any legal malpractice action which they might subsequently bring against Attorney Toghia. They also argued that attorney-client arbitration agreements were subject to strict scrutiny for conflict of interest, and the arbitration provisions were required to be in 10-point bold red type. The Powers further contended that even if the arbitration provisions were enforceable, they should not be enforced pursuant to Code of Civil Procedure section 1281.2, which gives the trial court discretion to refuse to enforce an arbitration agreement where the action involves third parties who are not subject to the arbitration agreement.

The trial court denied the petition to compel arbitration relying on *Lawrence* v. *Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501 [256 Cal.Rptr. 6] and two opinions of the State Bar, Nos. 1989-116 and 1977-47 (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. Nos. 1989-116 and 1977-47). The trial court determined that an agreement between an attorney and a client to arbitrate legal malpractice claims must be strictly scrutinized. The trial court found: "As to the March 3, 1993 agreement, the Court found specifically that the arbitration clause in it was not in bold or otherwise large or distinct print, it was at the end of the document, the Powers were not encouraged to seek the advice of independent counsel, and Toghia did not specifically inform them that by signing it they were waiving important rights, to wit, the right to a jury trial on a malpractice claim against him and his law firm. Accordingly, there was no informed consent to arbitrate the Powers' malpractice claim brought herein against Toghia and [MTO]. [¶] As to the September 9, 1993 fee agreement, the Court found specifically that the Plaintiffs were not informed or advised by their lawyer, Toghia, that they were waiving their right to a trial on any malpractice committed by Toghia, that the arbitration clause came at the end of the agreement, that the arbitration clause was not set out in bold or otherwise large or distinct type, and that the Plaintiffs were not encouraged to seek the advice of independent counsel. Accordingly, the Court found that the Powers did not give their informed consent to arbitrate their malpractice claim against Toghia and [DCC], under the September 9, 1993 agreement."

## DISCUSSION

As a general rule, a written agreement to arbitrate a future controversy is valid and enforceable and requires no special waivers or provisions.

Exceptions to the general rule may apply if the arbitration provision is included within an adhesion contract or the scope of the arbitration provision is ambiguous. An attorney may ethically, and without conflict of interest, include in an initial retainer agreement with a client a provision requiring the arbitration of both fee disputes and legal malpractice claims.

*Arbitration Agreements*

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) ■ "[A]rbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious and economical method of relieving overburdened civil calendars [citation]." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) "Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

■ An arbitration provision need not contain an express waiver of the right to a jury trial to be enforceable. "[T]o predicate the legality of a consensual arbitration agreement upon the parties' express waiver of jury trial would be as artificial as it would be disastrous. [¶] When parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of, the judicial—a forum in which, as they well know, disputes are not resolved by juries. Hence there are literally thousands of commercial and labor contracts that provide for arbitration but do not contain express waivers of jury trial. . . . [T]o destroy their viability upon an extreme hypothesis that they fail expressly to negative jury trials would be to frustrate the parties' interests and destroy the sanctity of their mutual promises." (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at pp. 713-714.) Failure of a party to read the entire agreement is not a reason for its revocation. (*Federico* v. *Frick* (1970) 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74].)

The Powers contend that the arbitration provisions are unenforceable because they did not carefully read the agreements, did not understand the significance of the arbitration provisions, and did not knowingly waive their right to a jury trial in a legal malpractice action. As a general rule, such arguments may not be used to invalidate a written arbitration provision. We consider next whether other considerations justify a different result.

*Adhesion Contracts*

■ An arbitration provision in an adhesion contract is legally enforceable unless the provision (1) does not fall within the reasonable expectations of the weaker party, or (2) is unduly oppressive or unconscionable. (*Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 415-416, fn. 9 [220 Cal.Rptr. 807, 709 P.2d 826]; *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820 [171 Cal.Rptr. 604, 623 P.2d 165]; *Stirlen* v. *Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1530-1533 [60 Cal.Rptr.2d 138].) Where an arbitration provision is included in a contract of adhesion, "[t]he law ought not to decree a forfeiture of such a valuable right where the [weaker party] has not been made aware of the existence of an arbitration provision or its implications. Absent notification and at least some explanation, the [weaker party] cannot be said to have exercised a 'real choice' in selecting arbitration over litigation." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 361 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) "[C]ourts will not enforce provisions in adhesion contracts which limit the duties or liability of the stronger party unless such provisions are 'conspicuous, plain and clear' [citation] and will not operate to defeat the reasonable expectations of the parties [citation]." (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 710.)

■ "A contract of adhesion has been defined as 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1317 [231 Cal.Rptr. 315].) "In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service. . . . [¶] . . . [I]n all prior contract of adhesion cases, the courts have concerned themselves with weighted contractual provisions which served to limit the obligations or liability of the stronger party." (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 711.) Thus, for example, a hospital admissions form constitutes an adhesion contract because a patient being admitted to a hospital is in no position to debate his or her terms of admission. (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at p. 357.)

■ Neither the March 3, 1993, agreement nor the September 9, 1993, amendment is an adhesion contract. The Powers did not enter into a standardized contract with Attorney Toghia on a take it or leave it basis. The retainer agreement and the amendment were negotiated and individualized agreements. The Powers possessed the freedom to employ the attorney of their choice and bargain for the terms of their choice. The Powers' decision to change legal counsel and their successful renegotiation of the terms of their fee arrangement with Attorney Toghia demonstrate that they possessed substantial bargaining strength.

*Ambiguity*

■ Our Supreme Court long ago established "[t]he interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635-1661; Code Civ. Proc., §§ 1856-1866.) . . . It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) The question must be decided de novo by this court, unless the interpretation depends upon extrinsic evidence. (*Home Federal Savings & Loan Assn.* v. *Ramos* (1991) 229 Cal.App.3d 1609, 1613 [284 Cal.Rptr. 1]; *Broffman* v. *Newman* (1989) 213 Cal.App.3d 252, 257 [261 Cal.Rptr. 532].) "[I]t is only when the foundational extrinsic evidence is in conflict that the appellate court gives weight to anything other than its de novo interpretation of the parties' agreement." (*Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455].)

■ "When the interpretation turns on a credibility determination, interpretation becomes a question of fact. [Citation.] When the contract is unambiguous, an appellate court is not bound by the trial court's interpretation of the contract. [Citations.] However, when the meaning of a contract is uncertain, and contradictory evidence is introduced to aid in the interpretation, the question of meaning is one of fact properly assigned to the [finder of fact] and its findings should not be disturbed by the appellate tribunal. [Citation.] [¶] Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was. [Citation.] The agreement is the writing itself. [Citation.] Parol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous. [Citations.] Parol evidence cannot, however, be admitted to show intention independent of an unambiguous written instrument." (*Sunniland Fruit, Inc.* v. *Verni* (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].)

■ "We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." (*Lloyd's Underwriters* v. *Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197-1198 [32 Cal.Rptr.2d 144]; Civ. Code, § 1644.) "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; *Beverly Hills Oil Co.* v. *Beverly Hills Unified Sch. Dist.* (1968) 264 Cal.App.2d 603, 609 [70 Cal.Rptr. 640].) "The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or

inequitable." (*Strong* v. *Theis* (1986) 187 Cal.App.3d 913, 920 [232 Cal.Rptr. 272].)

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.) Where the language in a contract is ambiguous, the contract should be interpreted most strongly against the party who prepared it. (*Burr & Ladd, Inc.* v. *Marlett* (1964) 230 Cal.App.2d 468, 474 [41 Cal.Rptr. 130]; *Kanner* v. *National Phoenix Industries, Inc.* (1962) 203 Cal.App.2d 757, 760-761 [21 Cal.Rptr. 857].) However, "this canon applies only as a tie breaker, when other canons fail to dispel uncertainty." (*Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 596 [19 Cal.Rptr.2d 295].)

*Lawrence* v. *Walzer & Gabrielson, supra,* 207 Cal.App.3d 1501, specifically addressed an arbitration provision in an attorney retainer agreement. In *Lawrence,* the retainer agreement and the arbitration provision dealt almost exclusively with financial matters. (*Id.* at p. 1506.) The client opposed arbitration on the basis of her declaration that she had not understood she was waiving her right to a jury trial in a legal malpractice action and would not have signed the retainer agreement if she had known she was agreeing to submit future legal malpractice claims to arbitration. The trial court found the client's declaration to be credible and denied the attorney's petition to compel arbitration. Relying on extrinsic evidence and rules of construction, the appellate court found the arbitration provision to be ambiguous to the extent of its applicability to legal malpractice claims, as opposed to fee disputes. (*Ibid.*) In affirming the trial court's order denying the petition to compel arbitration, the appellate court construed the ambiguous arbitration provision of the retainer agreement as applying only to fee disputes and not to legal malpractice claims. It thus "avoid[ed] construing the retainer provisions as a document which misleadingly appear[ed] to the client to deal almost exclusively with financial matters, while extracting from her a significant yet inconspicuous relinquishment of the client's rights regarding future claims of malpractice." (*Id.* at pp. 1506-1507, fn. omitted.)

 The Powers contend that the arbitration provisions in these agreements are ambiguous because the agreements do not specifically state that malpractice claims must be arbitrated. They argue that the ambiguity must be construed against the attorney. We are not persuaded by this contention. Both arbitration provisions require that any dispute arising out of or related to professional services be resolved by arbitration. The ordinary meaning of "disputes arising out of or related to professional services" encompasses professional malpractice claims. Unlike the arbitration provision in

*Lawrence*, both the March 3, 1993, and the September 9, 1993, arbitration provisions unambiguously apply to legal malpractice claims as well as fee disputes. In the initial retainer agreement, the arbitration provisions relating to fee disputes are distinct and different from the arbitration provisions relating to disputes concerning other matters.

Neither provision could reasonably have been understood by the Powers to concern exclusively financial matters, nor is the "other disputes" language mere surplusage to arbitration of fee disputes. The March 3, 1993, arbitration provision contained a second paragraph devoted entirely to arbitration of disputes other than disputes over attorney's fees. In fact, unlike the first paragraph concerning fee disputes which provided that disputes were to be submitted to the Los Angeles County Bar Association, the second paragraph provided that other disputes were to be arbitrated before the American Arbitration Association. The September 9, 1993, amendment's language also clearly covered disputes arising out of professional services. The language in both arbitration provisions is broad enough to unambiguously include malpractice claims against defendants.[2] Moreover, such a construction of the language is both reasonable and equitable.

*State Bar Opinions*

A formal advisory opinion of the Standing Committee on Professional Responsibility and Conduct of the State Bar discusses the ethical propriety of provisions requiring the arbitration of legal malpractice disputes between attorneys and clients. "[T]he Committee reaffirms the principle that there is nothing ethically improper with including an arbitration provision in the *initial* attorney-client retainer agreement by which the attorney-client relationship is first established. The extent to which the client is aware of the provision and freely consents to it goes to the legal enforceability of the agreement, not its ethical propriety. However, where an arbitration provision is negotiated between an attorney and an *existing* client, ethical considerations aside from any legal considerations require that the attorney fully disclose the terms and consequences of the provision and that the client knowingly consent to it. It is the Committee's opinion that compliance with the provisions set forth in California Code of Civil Procedure section 1295 . . . would satisfy the ethical concerns present when an arbitration provision is negotiated with an existing client. [¶] . . . [¶] This opinion is issued by the Standing Committee on Professional Responsibility and Conduct of the State Bar of California. It is advisory only. It is not binding upon the courts,

---

[2]Since the arbitration provisions are unambiguous, we need not resort to extrinsic evidence of the parties' intent or other rules of construction to construe the provisions. Accordingly, we are not concerned with the declarations of Daniel Powers and Attorney Toghia submitted in opposition to and support of the petition to compel.

the State Bar of California, its Board of Governors, any persons or tribunals charged with regulatory responsibilities, or any member of the State Bar." (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1989-116, *supra*, p. 4, italics in original, fn. omitted.)[3]

The formal opinion of the State Bar expressly concluded that a provision requiring arbitration of legal malpractice claims did not limit the attorney's liability to the client for legal malpractice, but merely selected a forum for deciding those claims. (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1989-116, *supra*, p. 2.) The formal opinion further concluded that conflict of interest rules were not applicable to the inclusion in the initial retainer agreement of a provision requiring arbitration of legal malpractice. (*Ibid.*; cf. *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 598 [247 Cal.Rptr. 599, 754 P.2d 1096] [attorney's acquisition of an interest adverse to client's is subject to strict scrutiny].)[4] The formal opinion did suggest, however, that in order to avoid the possibility that an arbitration provision might be found unenforceable, an attorney would be advised to comply with the provisions of Code of Civil Procedure section 1295. (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1989-116, *supra*, p. 4, fn. 5.)

Code of Civil Procedure section 1295 requires that contracts for medical services containing malpractice arbitration provisions state in at least 10-point bold red type that by signing the agreement the patient (1) agrees to have any medical malpractice issue decided by a neutral arbitrator and (2) specifically waives the right to a jury or court trial. "Section 1295 was enacted in an extraordinary session of the Legislature called by the Governor to alleviate the escalating cost of medical malpractice insurance premiums (and resulting problems of health care availability) due to the surge of medical malpractice actions and high jury awards." (*Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198, 203 [191 Cal.Rptr. 611].)

Here, the initial retainer agreement contained a provision unambiguously requiring the arbitration of legal malpractice claims. There is nothing ethically improper about such a provision. It did not attempt to limit Attorney Toghia's liability to the Powers for legal malpractice. It violated no conflict of interest rules and was not adverse to the Powers. Arbitration provisions are beneficial to both parties. As to the amendment, we note

---

[3]State Bar Formal Opinion No. 1977-47, *supra*, was disapproved by State Bar Formal Opinion No. 1989-116 to the extent the earlier opinion was inconsistent. Accordingly, we do not discuss it.

[4]Conflict of interest rules may be applicable to arbitration provisions in retainer agreements sought to be used by the attorney against the client in connection with separate financial transactions. (*Mayhew* v. *Benninghoff* (1997) 53 Cal.App.4th 1365 [62 Cal.Rptr.2d 27].)

that the amendment did nothing more than confirm the existing arbitration agreement.

*American Arbitration Association (AAA)*

Both the initial retainer agreement and the amendment provide for the arbitration of legal malpractice claims before the AAA. The Powers note that Attorney Toghia has represented clients before the AAA and has been on the AAA panel of arbitrators for 20 years. The Powers were given this information after signing the initial retainer agreement, but before signing the amendment. They contend it would be unfair to require them to arbitrate their legal malpractice claim against Attorney Toghia before the AAA under these circumstances. It is unnecessary for us to decide this issue at this time. On remand, the trial court may require the arbitration to take place in a different arbitration forum if the interests of fairness require.

*Enforceability*

The arbitration provisions in this case are enforceable as to legal malpractice claims. The provisions unambiguously apply to the arbitration of legal malpractice claims. They do not violate any ethical proscriptions. No conflict of interest rules are applicable and, thus, strict scrutiny is not required. The failure of the Powers to carefully read the agreement and the amendment is not a reason to refuse to enforce the arbitration provisions. The arbitration provisions were not included in a contract of adhesion. The provisions were not required to be in compliance with Code of Civil Procedure section 1295. Attorney Toghia was not required to encourage the Powers to seek the advice of independent counsel. It was not necessary that the Powers expressly waive their right to a jury trial.

*Inconsistent Results*

██ The Powers contend that since their complaint alleges the same malpractice claims against Attorneys Glickman and Toghia, arbitration should not be compelled because there is a likelihood of inconsistent results if their claims against Attorney Toghia are tried separately from their claims against Attorney Glickman. The trial court made no findings on this issue. Code of Civil Procedure section 1281.2, subdivision (c) expressly provides that if an agreement to arbitrate is otherwise enforceable, the trial court shall order arbitration unless the party opposing arbitration is also a party to a pending court action with a third party "arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." In such instances, the trial court

may: (1) refuse to enforce the arbitration agreement and order intervention or joinder of all the parties in a single action or special proceeding; (2) order intervention or joinder as to all or only certain issues; (3) order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) stay arbitration pending the outcome of the court action or special proceeding. Upon remand, the trial court is to determine whether there is a likelihood of inconsistent results if the claims against Attorney Toghia are tried separately from the claims against Attorney Glickman. If the trial court finds such a likelihood, it shall exercise its discretion as to the appropriate remedy under Code of Civil Procedure section 1281.2, subdivision (c).

## DISPOSITION

The order denying the petition to compel arbitration is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellants Dickson, Carlson & Campillo; Maguire, Toghia & Orbach; and Nicholas J. Toghia are awarded their costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.

On May 23, 1997, the opinion was modified to read as printed above.