Filed 10/31/14  Park Plaza II, Ltd. v. American Bankers Ins. Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARK PLAZA II, LTD., | |
| Cross-complainant and Appellant, | G048916 |
| v. | (Super. Ct. No. 30-2012-00587659) |
| AMERICAN BANKERS INSURANCE COMPANY, | O P I N I O N |
| Cross-defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Reversed.

David B. Dimitruk for Cross-complainant and Appellant.

Frank J. Coughlin, Kim-Thao T. Le; Carlton Fields Jorden Burt and Frank G. Burt for Cross-defendant and Respondent.

\*          \*          \*

Cross-complainant and appellant Park Plaza II, Ltd. (Park Plaza) appeals from the trial court's order dismissing its cross-complaint against cross-defendant and respondent American Bankers Insurance Company (American Bankers) based on a forum selection provision designating Pinellas County, Florida, as the venue for "any lawsuit" between the parties over "Blanket Bond BIC 1117" (Blanket Bond). We conclude the trial court erred by construing the forum selection provision in isolation rather than in the context in which it appears in the Blanket Bond.

Although the forum selection provision states it applies to "any lawsuit," the contracting parties placed the provision at the end of a lengthy paragraph describing their rights to examine each other's records and to enforce those examination rights in court. This placement renders the forum selection provision ambiguous. As we explain below, the clause reasonably could be interpreted as applying to any lawsuit between the parties regardless of subject matter, but its specific placement renders it reasonably susceptible to an interpretation applying it only to the type of lawsuit described in the paragraph where it appears. Based on this ambiguity and American Bankers's failure to cite any rule of contract interpretation or other authority supporting its interpretation, we must interpret the provision against American Bankers because they created the ambiguity as the drafting party. We therefore conclude the forum selection provision does not apply to Park Plaza's cross-complaint because Park Plaza's claims do not concern the parties' rights to examine each other's records.

I

FACTS AND PROCEDURAL HISTORY

In March 2011, Kayla Tovo executed a written lease to rent an apartment in a Park Plaza development. The lease provided, "Before taking possession of the premises, resident shall deposit with landlord a security deposit in the amount of $300 and a Sure Deposit Bond in the amount of $218.75." The lease also designated

2

Advanced Management Company (Advanced Management) as the "owner's management agent." (Capitalization omitted.)

To obtain the Sure Deposit Bond, Tovo executed the "SureDeposit California Enrollment & Bond Acknowledgement" (Enrollment & Acknowledgement) and provided a money order payable to "Sure Deposit" in the amount of $218.75. The Enrollment & Acknowledgement stated, "I am enrolling on a bond that Bankers Insurance Company . . . issued for the benefit of the apartment community named on page two." Page two of the Enrollment & Acknowledgement identified "Bond Number BIC 1117" as Tovo's bond for Park Plaza's apartments. Under the bond, Bankers Insurance Company promised to pay any damages for which Tovo may be liable under her lease, including physical damage to her apartment and unpaid obligations, up to $1,250, and Tovo promised to reimburse Bankers Insurance Company for any amount it paid. The bond's purpose was to reduce the amount of the security deposit Tovo had to post at the start of her lease.

In August 2012, Tovo filed the underlying class action alleging Park Plaza and Advanced Management illegally required her and other similarly situated tenants to pay a nonrefundable premium to purchase a Sure Deposit Bond as part of, or in lieu of, a security deposit for the rented apartments. When she moved out of her apartment, Tovo alleged Park Plaza and Advanced Management charged her $82.37 for damage to the apartment and told her the premium she paid for the Sure Deposit Bond was nonrefundable and could not be applied to cover the damage to her apartment. Tovo alleged this violated statutory prohibitions against landlords charging tenants a nonrefundable security deposit (Civ. Code, § 1950.5, subds. (d) & (m)), the Consumer Legal Remedies Act (Civ. Code, § 1770, subd. (a)(14) & (19)), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

In response, Park Plaza filed a cross-complaint against Tovo and American Bankers. In a declaratory relief claim, Park Plaza alleged Bankers Insurance Company

3

issued Tovo's bond based on the Enrollment & Acknowledgement she executed, and therefore American Bankers assumed all liabilities and obligations under the "Certificate of Assumption and Novation" (Novation), which Park Plaza attached as an exhibit to the cross-complaint. The Novation identified "Bond # 1117" as the obligation American Bankers assumed and attached a copy of the Blanket Bond, dated May 30, 2008, between Bankers Insurance Company, as the surety, and Advanced Management, as the obligee. Park Plaza sought a judicial declaration of its, American Bankers's, and Tovo's rights and obligations under the Enrollment & Acknowledgement. In a separate cause of action, Park Plaza also alleged American Bankers must indemnify Park Plaza if it is found liable under Tovo's complaint.

American Bankers filed a motion to dismiss the cross-complaint based on a forum selection provision in the Blanket Bond that stated, "The venue of any lawsuit that may be filed will be Pinellas County, Florida." Although Park Plaza was not named in the Blanket Bond, American Bankers argued Park Plaza was bound by the forum selection provision because Advanced Management executed the Blanket Bond as Park Plaza's agent. Park Plaza opposed the motion, arguing American Bankers presented no evidence showing Advanced Management acted as Park Plaza's agent when it executed the Blanket Bond, the forum selection provision did not apply to Park Plaza's claims, and the forum selection provision was unenforceable.

The trial court granted the motion and dismissed the cross-complaint against American Bankers. The court found (1) Park Plaza was bound by the forum selection provision because "[i]t appears that Advanced [Management] is acting as Park Plaza's agent when executing agreements relating to rents derived from the property"; (2) the forum selection provision applied to Park Plaza's claims because its terms apply "to 'any lawsuit'"; and (3) Park Plaza's arguments on the forum selection clause's enforceability lacked merit. Park Plaza timely appealed from the order dismissing its cross-complaint.

4

## II

## DISCUSSION

A.    *The Forum Selection Provision Does Not Apply to Park Plaza's Claims Against American Bankers*

The trial court concluded the forum selection clause applied to Park Plaza's claims against American Bankers because the provision specified the venue for "any lawsuit that may be filed." Park Plaza contends the trial court erred because it interpreted the forum selection provision in isolation, rather than in the context of the entire contract. Because the forum selection provision is located at the end of a paragraph defining the contracting parties' rights to examine one another's records, Park Plaza contends it only applies to lawsuits addressing those examination rights. Based upon fundamental rules of contract interpretation, we agree.

Forum selection provisions are presumed valid, and the party seeking to prevent enforcement bears the burden to show enforcement would be unreasonable under the circumstances of the case. (*Miller-Leigh LLC v. Henson* (2007) 152 Cal.App.4th 1143, 1149.) A forum selection provision may apply to contractual and noncontractual causes of action depending on the breadth of the provision's language. (*Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1461.) Which claims are covered by a forum selection provision is a matter of contract interpretation. (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2014) ¶ 3:175, p. 3-56.5; *Bancomer*, at pp. 1461-1462 [tort claim for fraudulent inducement not subject to forum selection provision covering "'[a]ny conflict which may arise regarding the interpretation or fulfillment of this contract'"].)

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.]  . . .  [¶]  . . . [¶]  California recognizes the objective theory of contracts [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one

5

of the parties, that controls interpretation' [citation].  The parties' undisclosed intent or understanding is irrelevant to contract interpretation.  [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956 (*Founding Members*).)

"We ascertain [the parties'] intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates.  [Citations.]  We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation.  [Citation.]  We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage.  [Citation.]" (*Service Employees Internat. Union, Local 99 v. Options—A Child Care & Human Services Agency* (2011) 200 Cal.App.4th 869, 879 (*Service Employees Internat.*).)

The context in which the words subject to interpretation appear is important because "[t]he meaning of particular words or groups of words varies with the '. . . verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges). . . .  A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.'  [Citation.]  Accordingly, the meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. . . .'  [Citations.]" (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38-39 (*Pacific Gas*).)  "[E]ven a term that does not require context to have meaning, and on its own might appear to be completely lacking in ambiguity, can mean something altogether different when context is known, or in light of the circumstances under which it was uttered or written." (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 517 (*Gong*).)

6

"[W]here '"contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further."' [Citation.] 'If the contract is capable of more than one reasonable interpretation, it is ambiguous [citations], and it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties [citation].' [Citation.]" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524-525.)

"'In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.' (Civ. Code, § 1654.) Where the language in a contract is ambiguous, the contract should be interpreted most strongly against the party who prepared it. [Citations.] However, 'this canon applies only as a tie breaker, when other canons fail to dispel uncertainty.' [Citation.]" (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1112 (*Powers*); see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 799 (*Badie*).)

"Whether contractual language is ambiguous is a question of law that we review de novo. [Citations.] . . . The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence. [Citations.]" (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245; *Founding Members*, *supra*, 109 Cal.App.4th at p. 955 ["When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract"].)

Here, the forum selection provision states, "The venue of any lawsuit that may be filed will be Pinellas County, Florida." The provision appears as the final sentence in a lengthy paragraph entitled, "Examination of Records." (Bold, underscoring, and some capitalization omitted.) The paragraph first describes Advanced

Management's right to an accounting of all transactions "pertaining to this bond as frequently and in the form as may be agreed to by the parties." It grants Advanced Management the right to "initiate legal suit or other legal action to enforce this right." Next, the paragraph describes Advanced Management's obligation to grant American Bankers "access to, and the right to audit, [Advanced Management's] books and records . . . at all reasonable times . . . to determine any fact relating to this bond." It grants American Bankers the right to "initiate a suit or other legal action to enforce these rights." Finally, in the sentence immediately preceding the forum selection provision, the paragraph describes the prevailing party's right to recover attorneys fees and interest if "any legal actions or suits become necessary for any of the parties to this bond."[1]

The parties offer no extrinsic evidence regarding their intent or the surrounding circumstances when they executed the Blanket Bond in May 2008. Instead, they solely rely on the forum selection provision's language and where it appears in the Blanket Bond. Park Plaza argues the provision applies only to lawsuits brought to

---

[1]     In its entirety, the paragraph states as follows: "**<u>EXAMINATION OF RECORDS</u>** [¶] Surety grants Obligee the right to a complete and accurate accounting of all transactions pertaining to this bond as frequently and in the form as may be agreed to by the parties prior to the issuance thereof, providing that factors beyond Surety's control do not operate to hinder such efforts. The Obligee may initiate legal suit or other legal action to enforce this right. Obligee must give Surety access to, and the right to audit, Obligee's books and records, and the books and records of communities under Obligee's management, at all reasonable times during and after the Bond Period, to determine any fact relating to this bond. It will also be an absolute defense for Surety to any suit or action brought under this bond, if the Obligee refuses Surety's access to its books and records. Surety may initiate a suit or other legal action to enforce these rights. Surety recognizes that Obligee's books and records are proprietary and confidential. Surety will not disclose the contents of same to any other party except as may be required by law or regulatory body. In the event that any legal actions or suits become necessary for any of the parties to this bond, the prevailing party to such suit or other legal action shall be entitled to the recovery of reasonable costs associated with the suit or legal action, including attorney's fees and other associated expenses, together with interest at an annual rate of twelve percent (12%) (ten percent (10%) in the State of California). *The venue of any lawsuit that may be filed will be Pinellas County, Florida.*" (Italics added.)

8

enforce the obligation of each party to submit its records for examination because the provision appears at the end of a lengthy paragraph dedicated to that topic. American Bankers argues the forum selection provision applies to any lawsuit between the parties because the provision does not expressly limit its application to any particular type of lawsuit, and elsewhere in the Examination of Records paragraph when the parties intended to limit a provision to a lawsuit relating to the examination of records they included language expressly stating so. For example, in authorizing lawsuits to enforce their examination rights, the parties stated they could "initiate legal suit or other legal action to enforce *these* rights." (Original italics.)

The forum selection provision is ambiguous because it is reasonably susceptible to the different interpretations of both parties. The absence of any language expressly limiting the forum selection provision to a particular type of lawsuit supports an interpretation applying the provision's "any lawsuit" phrase to any lawsuit between the contracting parties. We must construe the forum selection provision in context, however. (*Service Employees Internat.*, *supra*, 200 Cal.App.4th at p. 879; see *Pacific Gas*, *supra*, 69 Cal.2d at pp. 38-39; *Gong*, *supra*, 163 Cal.App.4th at p. 517.) By placing the forum selection provision at the end of a lengthy paragraph describing the parties' rights to examine one another's records, we conclude the parties intended the provision to apply only to lawsuits involving the parties' examination of records. Indeed, we construe the "any lawsuit" phase to mean any lawsuit described earlier in that same paragraph, and the only lawsuits described there are lawsuits to enforce the parties' rights to examine records. American Bankers failed to provide any extrinsic evidence showing the parties expressed any other intent when they entered into the Blanket Bond.

When contracting parties intend a forum selection provision, an arbitration provision, a choice-of-law provision, or any other dispute resolution provision to govern all their disputes regardless of subject matter, they typically include the provision in a paragraph or section of their contract that addresses only how, where, or under what rules

9

they will resolve their disputes. Alternatively, the parties may employ language that clearly states they intend the provision to apply to all disputes relating to their contract or disputes arising out of their contractual relationship. Here, the parties failed to use language showing they intended the phrase "any lawsuit" to mean any lawsuit between them, as opposed to any lawsuit relating to their right to examine records.

American Bankers fails to cite any rule of contract interpretation or other authority supporting its contention the forum selection provision must be construed to apply to any lawsuit between the parties despite its location at the end of a lengthy paragraph discussing lawsuits to enforce the parties' right to examine one another's records. In the absence of any other rule of contract interpretation that resolves the ambiguity created by the forum selection clause's location in the Blanket Bond, we must resolve the ambiguity by interpreting the provision against American Bankers because it was the party who prepared the Blanket Bond and therefore is responsible for the uncertainty. (Civ. Code, § 1654; *Badie*, *supra*, 67 Cal.App.4th at p. 799; *Powers*, *supra*, 54 Cal.App.4th at p. 1112.)

American Bankers contends the interpretation we adopt requires us to rewrite the forum selection provision to state, "The venue of any lawsuit [*concerning books, records or an accounting*] that may be filed will be Pinellas County, Florida." (Original italics.) We disagree. As explained above, we conclude the context of the forum selection provision makes it reasonably susceptible to this interpretation without rewriting the provision.

Park Plaza's cross-complaint against American Bankers does not relate to the parties' rights to examine one another's records, but rather seeks a declaration of rights under the Enrollment & Acknowledgement Tovo executed to enroll under the Blanket Bond and whether it is entitled to indemnity in the event Park Plaza is found liable to Tovo on any of her claims. Accordingly, the forum selection provision does not apply and the trial court erred in concluding otherwise.

10

Our conclusion the forum selection provision does not apply to Park Plaza's cross-complaint eliminates the need to address the parties' contentions regarding whether Advanced Management acted as Park Plaza's agent when it signed the Blanket Bond in 2008, whether it is reasonable to enforce the forum selection provision in this case, the scope of Tovo's claims, and the merits of Park Plaza's claims. Accordingly, we express no opinion on these topics. [2]

### III

#### DISPOSITION

The order is reversed. Park Plaza shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

---

[2] Park Plaza asked us to judicially notice the following documents to show that American Bankers is now a party to the underlying action: (1) Tovo's second amended complaint naming American Bankers as a defendant; (2) American Bankers' demurrer to that pleading; and (3) the trial court's ruling on that demurrer. We deny Park Plaza's request because it asks us to judicially notice facts occurring after the trial court's ruling on the motion to dismiss (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239), and the documents are irrelevant to the contract interpretation issue on which we decide this appeal (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276).