[No. C063147. Third Dist. Apr. 29, 2011.]

UNITE HERE LOCAL 30 et al., Plaintiffs and Appellants, v.
DEPARTMENT OF PARKS AND RECREATION et al., Defendants and
Respondents;
DELAWARE NORTH COMPANIES PARKS & RESORTS AT SAN
DIEGO, LLC, et al., Real Parties in Interest and Respondents.

1202

## COUNSEL

Davis, Cowell & Bowe, Andrew J. Kahn and Adam J. Zapala for Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Mary E. Hackenbracht, Assistant Attorney General, Sara J. Russell and Jeremiah D. Blair, Deputy Attorneys General, for Defendants and Respondents Department of Parks and Recreation and Ruth Coleman.

Higgs, Fletcher & Mack, John Morris and Alexis S. Gutierrez for Defendant and Respondent Old Town Family Hospitality Corporation.

Fish & Richardson, Nancy L. Stagg and Olga I. May for Real Parties in Interest and Respondents.

## OPINION

**HULL, J.**—In 2004, following a competitive bidding process, defendant Department of Parks and Recreation (DPR) awarded real parties in interest Delaware North Companies Parks & Resorts, Inc. (DNCPR), and Delaware North Companies Parks & Resorts at San Diego (DNCPRSD) (hereafter collectively Delaware North) a contract to operate a concession at the Old Town San Diego State Historic Park for a period of 10 years (the Concession Contract). However, after only four years, DPR approved Delaware North's assignment of the Concession Contract to real party in interest Old Town Family Hospitality Corp. (OTFHC) for the remainder of the contract term.

As a result of the assignment, many of Delaware North's employees who had worked on the concession, some of whom were represented by plaintiff Unite Here Local 30 (Local 30), were terminated and not rehired by OTFHC, and Local 30 ceased to represent the employees working on the concession.

Local 30 and plaintiff Bridgette Browning, a California resident and taxpayer, brought this action against DPR seeking to overturn the assignment. Plaintiffs alleged the assignment violated both the competitive bidding provisions of the Public Resources Code and an assignment clause in the Concession Contract.

The trial court sustained a demurrer to the contract claim based on lack of standing. The court thereafter rejected the Public Resources Code claim, concluding the assignment did not cause a material change in the terms of the Concession Contract and, therefore, was not subject to competitive bidding requirements.

Plaintiffs appeal the ensuing judgment against them. We conclude the trial court correctly rejected plaintiffs' claims and affirm the judgment.

The facts of this matter are generally undisputed. From July 1971 through May 2005, the concession at issue in this matter, located at the Old Town San Diego State Historic Park (the Old Town concession), was operated by Bazaar Del Mundo (BDM). The latest concession contract with BDM was scheduled to expire in December 2003.

In March 2003, DPR issued a request for proposals (RFP) for a new contract to operate the Old Town concession. Bids were submitted by DNCPR, BDM, and others.

DPR eventually awarded the contract to DNCPR. DNCPR thereafter formed DNCPRSD to operate the concession. On December 14, 2004, in accordance with the bid criteria set forth in the RFP and following a bid protest by BDM, DPR and Delaware North entered into the Concession Contract. Paragraph 37(a) of the contract limits assignments and subconcessions. It reads: "No transfer, assignment, or corporate sale or merger by the Concessionaire that affects this contract or any part thereof or interest therein, directly or indirectly, voluntarily or involuntarily, shall be made unless such transfer, assignment or corporate merger or sale is first consented to in writing by State. Before State considers such assignment, evidence must be given to the State that the proposed assignee qualifies as a 'best responsible bidder' under the terms of Section 5080.05 of the Public Resources Code or 'best responsible person or entity submitting a proposal' under the terms of Section 5080.23 of the Public Resources Code and the Bid Prospectus or Request for Proposals under which this contract was awarded and executed. Any such assignment, to be effective, must comply with applicable law, including, without limitation on generality, Public Resources Code Sections 5080.20 and 5080.23."

During the latter part of 2008, Delaware North requested permission to assign the Concession Contract to OTFHC and submitted evidence of OTFHC's qualifications and evidence that OTFHC would operate the concession consistent with the terms of the Concession Contract. DPR requested Delaware North to contact the original bidders from 2003–2004 to determine if any would be interested in assuming the Concession Contract. Delaware North did so, but none of the original bidders expressed such an interest.

DPR reviewed the evidence submitted by Delaware North and determined that the proposed assignment would not effect any material changes in the

Concession Contract and that OTFHC met the requirements of a qualified assignee under paragraph 37(a).

On December 24, 2008, DPR approved the proposed assignment and entered into an amendment to the Concession Contract, subject to approval by the Attorney General and the Department of General Services. Such approval came on January 16, 2009. OTFHC took over the Old Town concession in May 2009.

In March 2009, plaintiffs filed this action against DPR, naming as real parties in interest Delaware North and OTFHC. The amended petition contained three causes of action: (1) breach of contract; (2) violation of the competitive bidding provisions of the Public Resources Code; and (3) violation of Government Code section 6253, subdivision (c), on the disclosure of public records.

Delaware North and OTFHC demurred to the amended petition. The trial court sustained the demurrer to the breach·of contract claim without leave to amend, concluding plaintiffs lacked standing to assert such a claim. The court overruled the remaining demurrers.

Plaintiffs dismissed their public records claim and the matter was submitted to the court on the Public Resources Code claim alone. The trial court concluded DPR's consent to the assignment did not violate the Public Resources Code. The court concluded the findings by DPR that OTFHC is a best responsible bidder and that the assignment would not materially change the terms and conditions of the Concession Contract are supported by the evidence. The court further concluded the assignment of a competitively bid contract need not itself be competitively bid when, as here, there is no material change in the terms of the contract. The court denied the petition and entered judgment against plaintiffs.

DISCUSSION

I

*Competitive Bidding Requirements*

Division 5, chapter 1.2, article 1 of the Public Resources Code (Pub. Resources Code, § 5080.02 et seq.; hereafter Article 1) sets forth requirements for awarding concession contracts in the state park system. (Undesignated statutory references that follow are to the Public Resources Code.) Section 5080.03 permits DPR to enter into contracts "for the construction, maintenance, and operation of concessions within units of the state park

system." (§ 5080.03, subd. (a).) Except as otherwise specified, "all contracts authorizing occupancy of any portion of the state park system for a period of more than two years shall be awarded to the best responsible bidder." (§ 5080.05.) Best responsible bidder is defined in Article 1 as the bidder who "will operate the concession (1) consistent with the contract, (2) in a manner fully compatible with, and complimentary to, the characteristics, features, and theme of the unit in which the concession will be operated, and (3) in the best interests of the state and public." (§ 5080.05.)

■ As part of the bid process, DPR must "prepare an invitation to bid, which shall include a summary of the terms and conditions of the concession sufficient to enable persons to bid solely on the basis of rates to be paid to the state." (§ 5080.06.) Notice must be given to the public (§ 5080.07) and bids are to be submitted under seal (§ 5080.09). Every contract awarded must be submitted to the Attorney General and the Department of General Services for approval (§ 5080.17).

Any concession contract involving a total investment or estimated annual gross sales in excess of $500,000 must first be reviewed by the State Park and Recreation Commission and approved by the Legislature as part of the annual budget process. (§ 5080.20.)

■ If the director of DPR determines it is in the best interest of the state, he or she may forgo the bidding process and use instead an RFP. In such case, DPR prepares an RFP, "which shall include the terms and conditions of the concession sufficient to enable a person or entity to submit a proposal for the operation of the concession on the basis of the best benefit to the state." (§ 5080.23, subd. (b).) DPR must also give notice of the RFP to the public. (§ 5080.26.) DPR then awards the contract to the best responsible person or entity submitting a proposal. (§ 5080.23, subd. (a).) Best responsible person or entity submitting a proposal is defined as "the person or entity submitting a proposal, as determined by specific standards established by the department, that will operate the concession in the best interests of the state and the public." (§ 5080.23, subd. (d).)

II

*Public Resources Code Claim*

The trial court concluded that where, as here, an assignment of a competitively bid concession contract covering state park property does not materially change the terms and conditions of that contract, and the assignee is either a best responsible bidder or a best responsible person or entity submitting a proposal, such assignment need not comply with Article 1. This

conclusion has both a factual and a legal component. First, the trial court determined, as a matter of fact, that OTFHC qualifies as a best responsible bidder or proposer and that the assignment does not materially change the terms and conditions of the Concession Contract. Next, the court concluded, as a matter of law, that under these circumstances, Article 1 does not apply. We review the first determination under the substantial evidence standard (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203–1204 [52 Cal.Rptr.2d 518]) and the second de novo (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]).

Plaintiffs challenge both components of the trial court's ruling. On the factual component, plaintiffs do not contest the determination that OTFHC qualifies as a best responsible bidder. However, plaintiffs do contend the assignment amounted to a material change in the contract terms, inasmuch as "no less than 16 sections" of the contract were modified, with the most significant modification being the identity of the concessionaire. As to the latter, plaintiffs argue that where, as here, the amount of money received by the state on the concession depends on the income produced by the concessionaire, which in turn depends on the efforts and abilities of the concessionaire, a change in the identity of the concessionaire is necessarily a material change.

Plaintiffs make no attempt to explain how the "no less than 16 sections" of the contract were amended or how those amendments effected a material change in the overall contract, except as to the identity of the concessionaire. A point raised in an appellate brief without argument or legal support "is deemed to be without foundation and requires no discussion by the reviewing court." (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].)

As for the change in concessionaire, plaintiffs do not take issue with OTFHC specifically. Rather, plaintiffs contend *any* change in the concessionaire would, of necessity, be a material change to the Concession Contract. In effect, plaintiffs argue, the Concession Contract cannot be assigned without complying with Article 1.

As so understood, plaintiffs' factual argument is subsumed in their legal argument. Plaintiffs contend, as a matter of law, that *any* assignment of the Concession Contract is subject to Article 1. This argument, in turn, has two components. First, plaintiffs argue *any* assignment of *any* concession contract is subject to Article 1. In the alternative, plaintiffs argue the contract at issue here, by virtue of the provisions making the state's income dependent on the identity of the concessionaire, cannot be assigned without complying with Article 1.

In support of their more general argument, plaintiffs cite various provisions of Article 1 which, they assert, make clear that *all* contracts relating to concessions in state parks are covered. In particular, plaintiffs cite section 5080.02, subdivision (c), which defines the word "contract" as "a contract for the construction, maintenance, and operation of a concession." They also cite section 5080.05, which states that "*all* contracts authorizing occupancy of any portion of the state park system for a period of more than two years" is subject to competitive bidding procedures. (Italics added.) Similarly, section 5080.06 refers to "*any* contract," section 5080.07 covers "*all* proposed contracts," and sections 5080.23 and 5080.26 refer to "*any* concession contract." (Italics added.) Plaintiffs argue an assignment from one concessionaire to another is a contract for the construction, maintenance and operation of a concession and therefore subject to Article 1.

■ Plaintiffs also rely on the strong public policy in favor of competitive bidding and RFP's in public contracting. Provisions requiring competitive bidding of government contracts " 'are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable . . . and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.' " (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934].) Given this strong public policy, any exception to competitive bidding requirements should be strictly construed. (*Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1256 [15 Cal.Rptr.3d 344] (*Marshall*).)

Plaintiffs cite *Marshall* as "instructive" on the present matter. In *Marshall*, the school district advertised for bids for renovation of an elementary school and the contract was awarded to B.F. Construction, Inc. (BFCI). Later, however, BFCI sent the district a letter complaining about change orders and lack of compensation for delays and asserting it would not be able to proceed effectively after a certain date. The district then exercised its right under the contract to terminate for convenience. (*Marshall, supra,* 119 Cal.App.4th at pp. 1245–1246.) Two months later, the district adopted an emergency resolution to award a new contract for completion of the construction project to Hayward Construction Co. without competitive bidding. Marshall, the successor of BFCI, filed a petition for writ of mandate seeking to set aside the award of the completion contract to Hayward, alleging there was no emergency warranting the failure to utilize competitive bidding. (*Id.* at pp. 1246–1247.) The trial court granted the petition. (*Id.* at pp. 1248–1249.)

The Court of Appeal affirmed. The district's resolution of emergency had been based on Public Contract Code section 20113, which permits contracting

without competitive bidding in emergency situations. (*Marshall, supra,* 119 Cal.App.4th at p. 1253.) The Court of Appeal indicated this emergency provision must be narrowly construed in light of the public policy in favor of competitive bidding and concluded the voluntary cancellation of the original contract by the district did not amount to such an emergency. (*Id.* at p. 1258.)

Plaintiffs contend that, in many ways, the facts of *Marshall* are indistinguishable from the present matter. According to plaintiffs: "Although DPR does not rely on a statutory emergency exception to the competitive-bidding/RFP process, it is instead relying on a judicially-created exception (i.e., that assignment contracts do not need to comply with the [Public Resources Code]). Just as in *Marshall,* here the original concessionaire—[Delaware North]—wanted to be relieved from its contract with DPR. And, in order to rectify this situation and give the contract to someone else, as in *Marshall,* DPR did not comply with the [Public Resources Code]'s competitive-bidding requirements."

Other than the court's invocation of the general rule in favor of competitive bidding for public contracts, there is nothing in *Marshall* that is instructive on the present matter. *Marshall* involved a contract that clearly fell within the scope of the competitive bidding statutes. The district had terminated its competitively bid contract and sought to enter into a new one. The issue was whether the district could take advantage of a purported emergency of its own creation to bypass the competitive bidding requirements for this new contract.

In the present matter, the original, competitively bid contract remains in force, and the issue is whether an amendment of that contract that replaces the original bidder with another falls within the scope of the competitive bidding statutes. This is not a question of whether an exception to the competitive bidding requirements applies but whether the requirements themselves apply in the first instance.

Of course, if DPR and Delaware North had cancelled their original contract and DPR was seeking to enter into a new one with OTFHC, the present matter would be comparable to *Marshall.* But it is not. Unlike the situation in *Marshall,* if DPR had refused to approve the assignment, the agreement between DPR and Delaware North would have continued in force under the same terms without any further competitive bidding. The question thus is whether the continuation of that contract under somewhat different terms, i.e., a different concessionaire, requires a new round of competitive bidding.

■ The question presented is one of statutory construction. In matters of statutory construction, our fundamental concern is with legislative intent.

(*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We determine such intent by looking first to the words of the enactment, giving them their usual and ordinary meaning. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) However, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].)

As noted above, plaintiffs point to a number of statutes in Article 1 which, they argue, demonstrate the Legislature intended that it apply to *all* contracts concerning state park concessions. They further argue the amendment to the Concession Contract at issue here is itself a contract, just like any other, and relates to state park concessions. Thus, they argue, it is subject to Article 1.

Plaintiffs' argument proves too much. While it is true the agreement to amend the Concession Contract to change the concessionaire is itself a contract, as that term is normally understood in the law, it is not true that all contracts touching in some way a concession contract are subject to Article 1. Plaintiffs characterize the assignment as creating a new contract for the Old Town concession. However, while it is technically true that a new arrangement has been created, this is not in fact a new contract, any more than a new contract is created every time an existing contract is amended in some way. The contract that was entered into in December 2004 with a term of 10 years remains in force.

■ As noted earlier, "contract" is defined in Article 1 as "a contract for the construction, maintenance, and operation of a concession." (§ 5080.02, subd. (c).) This says nothing about modifications or amendments to such contracts. Section 5080.18 sets forth provisions that must be included in every concession contract subject to Article 1. Subdivision (g) of section 5080.18 reads: "To be effective, any modification of the concession contract shall be evidenced in writing." In other words, if the contract is modified, i.e., amended, such amendment must be in writing. There would, of course, be no reason to include such a provision in a concession contract if every modification thereof amounted to a new contract requiring compliance with the competitive bidding or RFP provisions of Article 1. To the same effect, section 5080.20 states that any concession contract that is expected to involve a total investment or estimated annual sales in excess of $500,000 "shall not be advertised for bid, negotiated, renegotiated, *or amended in any material respect*" unless certain procedures are followed. (Italics added.) Logically, if any *material* amendment to an existing contract must comply with those procedures, a nonmaterial amendment need not do so.

██ In light of the entire enactment, it is clear that not all amendments to an existing concession contract are subject to Article 1. And because an assignment is merely one type of amendment, it follows that not all assignments are subject to Article 1.

Plaintiffs nevertheless argue the assignment at issue here is material, and therefore subject to Article 1, because the identity of the concessionaire is an important feature of the Concession Contract. Plaintiffs point out that, under Article 1, concession contracts are not "entered into solely for their revenue producing potential." (§ 5080.03, subd. (b).) Concession contracts are to be awarded to the best responsible bidder rather than the highest bidder. (§ 5080.05.) Thus, there is a qualitative aspect to the selection, looking both at the bid/proposal and the bidder/proposer. Therefore, plaintiffs argue, the public's interests are not protected merely because an assignee agrees to the same contract terms as the original contract, especially where, as here, the state's income is based on a percentage of the concessionaire's receipts. An emphasis on whether the contract terms remain the same, plaintiffs argue, "fails to take into account whether the proposed new operator is *actually qualified* to attract a large number of customers over the remainder of the contract, whether it can actually carry-out the contract, whether it has more long-term capacity to do so than its competitors in the industry, whether it has a solid track-record of completing concessions contracts, and whether another entity may be *more* qualified to carry-out the historical and recreational aims of the contract . . . ."

Assuming plaintiffs are correct that the qualifications of the concessionaire could have an impact on the services and income received by the state under the Concession Contract, plaintiffs failed to establish that OTFHC is in any way less qualified than Delaware North to operate the Old Town concession. Thus, even if, hypothetically, an assignment to a less qualified concessionaire would effect a material change in the contract, plaintiffs failed to establish that to be the case here.

As for plaintiffs' argument that an emphasis on whether the contract terms remain the same overlooks whether the assignee is qualified to operate the concession, this ignores the fact that, under paragraph 37 of the Concession Contract, Delaware North was required to present the state with evidence that the assignee "qualifies as a 'best responsible bidder' under the terms of Section 5080.05 of the Public Resources Code or 'best responsible person or entity submitting a proposal' under the terms of Section 5080.23 of the Public Resources Code."

Plaintiffs argue a failure to apply Article 1 under the circumstances presented here would lead to the following "absurd" results: (1) An operator

whom DPR would never have found to be the best responsible bidder/proposer could become a concessionaire simply by obtaining an assignment from another; (2) an operator who obtains a 10-year contract paying the state 6 percent revenue could assign it to another six years later on the same terms, even though the prevailing rate at the time of the assignment is greater than 6 percent; and (3) a disreputable company could obtain a concession by making a secret deal with a front company to obtain the contract and then assign it.

Plaintiffs' arguments presume a hypothetical situation not presented in the matter before us. We do not have here a situation where Delaware North has assigned the Concession Contract to a disreputable company or one not qualified as a best responsible bidder or best responsible person or entity. Under the terms of the Concession Contract, the state will not consider a proposed assignment unless and until it receives evidence that the proposed assignee qualifies as a best responsible bidder or best responsible person or entity submitting a proposal, as those terms are defined in Article 1. Thus, DPR does not merely focus on whether the assignee agrees to the same terms as in the original concession contract, as plaintiffs argue, but also considers the qualifications of the assignee. Thus, the first and third "absurd" scenarios identified by plaintiffs could not occur. As for the second, we fail to see how the state is harmed where the assignment would result in the state receiving the same rate of income it would have received if the assignment had not occurred.

■ Plaintiffs contend, in any event, the present matter involves a type of contract that cannot legally be assigned. In *Knipe v. Barkdull* (1963) 222 Cal.App.2d 547, 551 [35 Cal.Rptr. 283], the Court of Appeal noted: "Where a contract calls for the skill, credit or other personal quality of the promisor, it is not assignable." Plaintiffs argue the present matter is a personal services contract analogous to *Nassau Hotel Co. v. Barnett & Barse Corp.* (N.Y.App.Div. 1914) 162 A.D. 381 [147 N.Y.S. 283] (*Nassau Hotel*), in which the court held a contract whereby two individuals undertook to operate a hotel could not be assigned to a corporation later formed by those individuals.

Aside from the obvious fact that the decision in *Nassau Hotel* turned on the defendants' attempt to limit their exposure by converting their unlimited personal liability under the contract into limited corporate liability, the primary distinction between that case and the present one is the fact the parties here, i.e., DPR and Delaware North, included a provision in their agreement permitting assignment. Hence, the parties expressly overrode any common law limitation on assignment that might have applied because of the

nature of the services to be performed. The validity of the Concession Contract, and the assignment provision therein, is not challenged in this proceeding.

 In light of the trial court's factual determination that the assignment did not materially change the terms of the Concession Contract, which determination is not effectively challenged here, we conclude the trial court correctly rejected plaintiffs' Public Resources Code claim.

### III

### *Contract Claim*

Plaintiffs contend the trial court erred in sustaining the demurrer to their contract claim. In that claim, plaintiffs alleged paragraph 37 of the Concession Contract required the parties to comply with Article 1 in the event of an assignment and they failed to do so. The trial court concluded plaintiffs lack standing to assert this claim, because they are not parties to the Concession Contract.

Plaintiffs contend the trial court erred. They argue a third party who is within the class of those for whose benefit a contract is made have standing to sue for breach of that contract. They further argue, "an assignment clause in a contract that expressly incorporates provisions of the competitive-bidding/RFP process can be said to have the intent to benefit the general public and the taxpayer." Likewise, because the Concession Contract incorporated a neutrality provision regarding union organizing, Local 30 and the employees it represents "are clearly *intended* beneficiaries of the original contract between DPR and [Delaware North]."

OTFHC contends this issue is essentially moot, because the trial court afforded plaintiffs standing anyway and resolved their claims on the merits. Not so. The trial court resolved plaintiffs' Public Resources Code claim, the second cause of action, on the merits and concluded Article 1 does not apply under the circumstances presented. The court did not consider plaintiffs' claim for breach of contract, which is premised on an assertion that paragraph 37 of the Concession Contract contains an independent requirement that the parties comply with Article 1. Thus, the issue is not moot.

 Civil Code section 1559 reads: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.' " (*Spinks v. Equity Residential*

*Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1022 [90 Cal.Rptr.3d 453].) "Under the intent test, 'it is not enough that the third party would incidentally have benefited from performance.' [Citation.] 'The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party.' [Citation.] 'The effect of the section is to exclude enforcement by persons who are only incidentally or remotely benefited.' [Citation.] [¶] On the other hand, 'the third person need not be named or identified individually to be an express beneficiary.' [Citations.] 'A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made.' [Citations.]" (*Id.* at pp. 1022–1023.)

Plaintiffs contend Bridgette Browning has a right to sue on the Concession Contract as a taxpayer of California. They point out that paragraph 37 required the parties to comply with sections 5080.20 and 5080.23 of Article 1, and these competitive bidding/RFP procedures are intended to eliminate favoritism, fraud, corruption and misuse of public funds. Thus, plaintiffs argue, an assignment clause expressly incorporating provisions of Article 1 "can be said to have the intent to benefit the general public and the taxpayer."

█ Of course, any contract entered into by the state or its many subdivisions would presumably be for the benefit of the state's residents and taxpayers, just as a contract entered into by a corporation would presumably be for the benefit of the corporation's shareholders or a contract entered into by a club or association would be for the benefit of the association's members. Any income derived by the state from a contract it enters into would inure to the benefit of the state's residents and taxpayers. Likewise, a contract whereby the state agrees to pay a construction company to erect a bridge would benefit the traveling public. However, that does not mean each member of the public may sue to enforce that contract. The fact that members of the public derive a benefit from the contract does not make them intended beneficiaries of the contract within the meaning of Civil Code section 1559. Such benefit is merely incidental to the contract.

Plaintiffs nevertheless argue that, because paragraph 37 of the Concession Contract requires compliance with portions of Article 1, and because Article 1 benefits the public by assuring contracts will be awarded in a way most advantageous to the state and its residents, state residents are more than incidentally benefited. We disagree.

█ In California, as elsewhere, third party beneficiaries are categorized as either creditor beneficiaries or donee beneficiaries. (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841]

(*Martinez*).) "A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee." (*Ibid.*) It is not claimed here that either plaintiff is a creditor beneficiary.

"A person is a donee beneficiary only if the promisee's contractual intent is either to make a gift to him or to confer on him a right against the promisor. [Citation.] If the promisee intends to make a gift, the donee beneficiary can recover if such donative intent must have been understood by the promise or from the nature of the contract and the circumstances accompanying its execution." (*Martinez, supra*, 11 Cal.3d at pp. 400–401.)

In *Martinez*, the plaintiffs claimed to be members of a class of no more than 2,017 residents of East Los Angeles who qualified for employment under contracts entered into by three corporate defendants with the federal government under legislation intended to benefit residents of depressed areas. Under the contracts, the defendants agreed to lease space in a vacant jail, invest in renovations, establish facilities for the manufacture of certain articles, and train and employ local residents. The plaintiffs sought damages in the form of lost wages based on the defendants' failure to hire as many employees as they had agreed. (*Martinez, supra*, 11 Cal.3d at pp. 398–399.) The trial court sustained demurrers to the complaint based on lack of standing. (*Id.* at p. 397.)

 The Supreme Court affirmed, explaining: "Unquestionably plaintiffs were among those whom the Government intended to benefit through defendants' performance of the contracts which recite that they are executed pursuant to a statute and a presidential directive calling for programs to furnish disadvantaged persons with training and employment opportunities. However, the fact that a Government program for social betterment confers benefits upon individuals who are not required to render contractual consideration in return does not necessarily imply that the benefits are intended as gifts. . . . The benefits of such programs are provided not simply as gifts to the recipients but as a means of accomplishing a larger public purpose." (*Martinez, supra*, 11 Cal.3d at p. 401.) According to the court: "The Government may, of course, deliberately implement a public purpose by including provisions in its contracts which expressly confer on a specified class of third persons a direct right to benefits, or damages in lieu of benefits, against the private contractor. But a governmental intent to confer such a direct right cannot be inferred simply from the fact that the third persons were intended to enjoy the benefits." (*Ibid.*)

The high court in *Martinez* distinguished that case from *Shell v. Schmidt* (1954) 126 Cal.App.2d 279 [272 P.2d 82], where a building contractor

entered into an agreement with the federal government to build homes with required specifications for sale to war veterans at or below ceiling prices. The plaintiffs, 12 veterans who purchased homes that failed to comply with the agreed specifications, were held to be third party beneficiaries of the agreement.

In *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157 [78 Cal.Rptr.3d 572], the plaintiffs, a class of employees, sued their employer for failure to pay wages in accordance with a contract between the employer and the City of Hayward requiring the payment of a "living wage." The court found the employee plaintiffs were intended third party beneficiaries of the contract, because the living wage requirement was clearly intended to benefit them. (*Id.* at pp. 1193–1194.)

All three of the foregoing cases involved a special class of individuals who were clearly intended to be benefited by the contractual requirement at issue. In two of the cases, the court found standing, whereas in *Martinez* the court found no standing because, even though the contractual requirement was intended to benefit the residents of the depressed zone, the overall purpose of the requirement was much broader.

In the present matter, we do not even have a special class of plaintiffs for whom the state sought to provide benefits under the Concession Contract. Plaintiffs contend Browning is a third party donee beneficiary simply by virtue of the fact she is a resident and taxpayer. In other words, according to plaintiffs, all residents and taxpayers of the state are third party donee beneficiaries of the Concession Contract. But, as a resident and taxpayer, Browning is no more than an incidental beneficiary who benefits merely because the state as a whole benefits. This is an insufficient basis to confer standing.

Likewise, Local 30 is no more than an incidental beneficiary. Plaintiffs argue that because the Concession Contract contains a "neutrality agreement" regarding union organizing, "Local 30 and the employees it represents are clearly *intended* beneficiaries of the original contract between DPR and [Delaware North]." The neutrality agreement to which plaintiffs refer states, in part: "Concessionaire shall not use the Premises to hold a meeting with any employee(s) or supervisor(s) if the purpose of the meeting is to assist, promote, or deter union organizing." This provision hardly reveals an intent to confer a benefit on Local 30, or any union for that matter. At best, it shows an intent not to provide either a benefit or a detriment to union organizing.

Plaintiffs further argue paragraph 37 of the Concession Contract "necessarily confers a benefit on Local 30 in its capacity as bargaining representative

because it creates a public vetting process which gives the union some advanced notice of potential successor employers, and thus provides an opportunity for the union to intervene in the process on behalf of the employees." However, to the extent paragraph 37 requires advance notice to the union of a change in concessionaire and an opportunity for the union to intervene, this is a benefit shared by the public at large and is clearly an incidental benefit arising from paragraph 37.

Plaintiffs' contract arguments are limited to whether they qualify as third party beneficiaries under the Concession Contract. Plaintiffs do not argue they have standing to sue simply because, as residents and taxpayers, they can seek mandamus to force DPR to do its job and enforce the contract according to its terms.

We conclude the trial court correctly determined plaintiffs are not third party beneficiaries under the Concession Contract and therefore lack standing to sue on that basis.

### DISPOSITION

The judgment is affirmed. Defendants and real parties in interest are awarded their costs on appeal.

Blease, Acting P. J., and Nicholson, J., concurred.