[No. B226724. Second Dist., Div. Three. Nov. 9, 2011.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 99, et al.,
Plaintiffs and Appellants, v.
OPTIONS—A CHILD CARE AND HUMAN SERVICES AGENCY,
Defendant and Respondent.

870

COUNSEL

Rothner, Segall & Greenstone, Glenn Rothner, Jonathan Cohen and Anthony P. Resnick for Plaintiffs and Appellants.

Gordon & Rees, Roger M. Mansukhani, Joshua B. Wagner and Matthew G. Kleiner for Defendant and Respondent.

OPINION

**CROSKEY, J.**—A government contractor agreed under the terms of its contracts to comply with the Ralph M. Brown Act (Brown Act) (Gov. Code, § 54950 et seq.) in meetings of its board of directors to the extent that the

meetings involved publicly funded programs. We hold that members of the public are the intended beneficiaries of such a contractual provision and can enforce the provision as third party beneficiaries of the contract. The government contractor cannot be sued directly under the Brown Act, however, because it is not a "legislative body" as defined in the act.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Options—A Child Care and Human Services Agency (Options) is a nonprofit corporation that administers subsidized childcare and education services to families in the San Gabriel Valley and Whittier areas of Los Angeles County under contract with the State Department of Education. Service Employees International Union, Local 99 (SEIU), is a labor union representing employees in public school districts and childcare facilities in Southern California. Francisco Torres is an employee of SEIU.

Options and the State Department of Education entered into a series of contracts effective from July 1, 2007, to June 30, 2008. Fourteen of those contracts expressly incorporated separate documents entitled "Funding Terms and Conditions or Program Requirements," including a provision stating: "Any private tax-exempt or private non-tax exempt agency receiving public funds under these regulations must, to the extent of the publicly funded program, comply with the Ralph M. Brown Open Meetings Act ('Brown Act'), *Government Code* Sections 54950–54963. Board meetings shall be open to the public except for meetings with its designated representatives prior to and during consultations and discussions with representatives of employee organizations . . . . Minutes of these open meetings shall be available to the public."

Four other contracts expressly incorporated other program requirements documents, including a provision stating in the following or substantially identical language: "Each contractor is required, as a condition of its contract with the California Department of Education (CDE), Child Development Division (CDD), to adhere to these requirements and Title 5 regulations pertaining to Child Development Programs, in addition to all other applicable laws and regulations."

California Code of Regulations, title 5, former section 18015 stated: "Any private tax exempt or private non-tax exempt agency receiving public funds under these regulations must, to the extent of the publicly funded program,

comply with the Ralph M. Brown Open Meetings Act ('Brown Act'), *Government Code* Sections 54950–54961."[1]

Options's board of directors met on June 18, 2008. Several items on the meeting agenda related to publicly funded programs, but no publicly accessible agenda was posted 72 hours before the meeting. The agenda did not indicate the items to be discussed in executive session, and those items were not announced during the public portion of the meeting. Written reports distributed to the directors at the meeting were not made available to members of the public attending the meeting.

### 2. Trial Court Proceedings

SEIU and Torres filed a complaint against Options in August 2008 and filed a first amended complaint in October 2009. They allege in their first amended complaint that Options agreed under the terms of its contracts with the State Department of Education to comply with the Brown Act. They allege that Options failed to comply with the Brown Act at its meeting of June 18, 2008, by (1) failing to post an agenda at least 72 hours before the meeting; (2) failing to disclose the items to be discussed in executive session; (3) failing to provide members of the public an opportunity to address the board; and (4) failing to make available to members of the public reports and other writings distributed to the directors.

SEIU and Torres allege counts against Options for (1) violation of the Brown Act and (2) breach of contract. They allege in their first count that Options agreed to be treated as a legislative body under Government Code section 54952 and that Government Code section 54960, subdivision (a) provides for injunctive and declaratory relief to stop or prevent a violation of the Brown Act. They allege that an actual and present controversy exists as to whether Options complied with the Brown Act at its meeting of June 18, 2008, and that they are entitled to a judicial declaration that Options violated the Brown Act in the manners alleged. They also allege that they are entitled to an injunction compelling Options and its agents and employees to comply with the Brown Act. They allege further that they are entitled to recover their attorney fees under Government Code section 54960.5.

SEIU and Torres allege in their second count for breach of contract that they are intended beneficiaries of the contract provisions requiring compliance with the Brown Act, that they are entitled to enforce those contractual provisions as third party beneficiaries, and that they are entitled to the same remedies alleged in their first count.

---

[1] California Code of Regulations, title 5, former section 18015 was repealed on August 24, 2010.

SEIU and Torres moved for summary judgment or alternatively for summary adjudication that (1) they are third party beneficiaries of the contracts between Options and the State Department of Education and (2) Options violated the Brown Act at the meeting of its board of directors on June 18, 2008.

Options also moved for summary judgment or summary adjudication of each count. It argued that SEIU and Torres could not prevail on their first count because Options was not a "legislative body" as defined in Government Code section 54952 and therefore was not governed by the Brown Act. Options argued with respect to the second count that SEIU and Torres could not enforce the contracts as third party beneficiaries because they were merely incidental beneficiaries rather than intended beneficiaries of the contracts.

The trial court stated at the hearing on the motions for summary judgment or summary adjudication that the Brown Act was inapplicable because Options was not a "legislative body" as defined in the act and that the State Department of Education had no authority to enact a regulation that was inconsistent with the Brown Act. The court stated that Options therefore was entitled to judgment in its favor on the count for violation of the Brown Act. The court stated regarding the count for breach of contract that SEIU and Torres were not intended beneficiaries of the contracts because the contracts did not state that the contracting parties would be liable to SEIU or Torres for damages resulting from Options's failure to perform its contractual obligations, citing *Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394 [113 Cal.Rptr. 585, 521 P.2d 841] (*Martinez*).

The trial court therefore granted Options's motion for summary judgment, denied the motion for summary judgment or summary adjudication by SEIU and Torres, and entered judgment in favor of Options.[2] SEIU and Torres timely appealed the judgment.

## CONTENTIONS

SEIU and Torres contend the award of summary judgment in favor of Options was error and they are entitled to summary judgment in their favor because (1) the undisputed evidence compels the conclusion that they are members of a class of intended beneficiaries of the contractual provisions requiring compliance with the Brown Act and (2) although Options is not a "legislative body" as defined in the Brown Act, it agreed under the terms of

---

[2] We judicially notice the minute order filed on June 11, 2010, ruling on the two motions. (Evid. Code, § 452, subd. (d).)

the contracts to be governed by the Brown Act and therefore can be sued directly under the Brown Act.

## DISCUSSION

### 1. Standard of Review

Summary judgment is appropriate only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on that cause of action as a matter of law. (*Id.*, subd. (f)(1).) A plaintiff moving for summary judgment or summary adjudication must prove each element of the cause of action. (*Id.*, subd. (p)(1).) A defendant moving for summary judgment or summary adjudication must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the moving party meets its initial burden, the burden shifts to the opposing party to show that a triable issue of material fact exists. (*Id.*, subd. (p)(1) & (2).)

We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].) We will affirm a summary judgment or summary adjudication if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons. (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [4 Cal.Rptr.3d 785]; see Code Civ. Proc., § 437c, subd. (m)(2).)

### 2. Brown Act Requirements

The Brown Act states that "[a]ll meetings of the legislative body of a local agency shall be open and public . . . ," except as provided in the act. (Gov. Code, § 54953, subd. (a).) In addition, among other requirements, a meeting agenda must be posted at least 72 hours before the meeting stating a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session. (*Id.*, § 54954.2, subd. (a)(1).) The legislative body must disclose at an open meeting the matters to be addressed in closed session. (*Id.*, § 54957.7, subd. (a).)

Any writings distributed to all or a majority of the members of a legislative body in connection with a matter to be discussed or considered at an open

meeting must be made available for public inspection upon request. (Gov. Code, § 54957.5, subd. (a).) Members of the public must be provided an opportunity at any regular meeting to directly address the legislative body on any item of interest to the public. (*Id.*, § 54954.3, subd. (a).)

As these requirements show, the purpose of the Brown Act is to ensure openness in decisionmaking by public agencies and facilitate public participation in the decisionmaking process. (Gov. Code, § 54950;[3] *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 95 [82 Cal.Rptr.2d 452].)

A "local agency" is defined for purposes of the Brown Act as "a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency." (Gov. Code, § 54951.)

A "legislative body" is defined for purposes of the Brown Act as:

"(a) The governing body of a local agency or any other local body created by state or federal statute.

"(b) A commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body. . . .

"(c)(1) A board, commission, committee, or other multimember body that governs a private corporation, limited liability company, or other entity that either:

"(A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity.

"(B) Receives funds from a local agency and the membership of whose governing body includes a member of the legislative body of the local agency

---

[3] "[T]he Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (Gov. Code, § 54950.)

appointed to that governing body as a full voting member by the legislative body of the local agency. [¶] . . . [¶]

"(d) The lessee of any hospital the whole or part of which is first leased . . . ." (Gov. Code, § 54952.)

 The district attorney or any interested person may commence an action for mandamus, an injunction, or declaratory relief to stop or prevent a violation or threatened violation of the Brown Act by members of the legislative body, or to determine whether the Brown Act applies to actions or threatened actions of the legislative body.[4] (Gov. Code, § 54960, subd. (a).) The prevailing plaintiff in such an action may recover its attorney fees if the court finds that the legislative body has violated the Brown Act. (Gov. Code, § 54960.5.) The prevailing defendant in such an action may recover its attorney fees only if the court finds that the action was clearly frivolous and totally lacking in merit. (*Ibid.*)

### 3. Members of the Public Are Entitled to Enforce the Contracts as Third Party Beneficiaries

 A third party may enforce a contract made for his or her benefit or made for the benefit of a class of which he or she is a member. (Civ. Code, § 1559; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46]; *Garratt v. Baker* (1936) 5 Cal.2d 745, 748 [56 P.2d 225].) Civil Code section 1559 states, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." The contract need not expressly state that it is intended to benefit a third party as long as such an intent is apparent through the ordinary means of contract interpretation. (*Hess, supra*, at p. 524; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436–437 [204 Cal.Rptr. 435, 682 P.2d 1100].) A person need not be the sole or even the primary beneficiary to be a third party beneficiary. (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1233 [18 Cal.Rptr.3d 178].) A person whose benefit is only incidental or remote, however, is not an intended beneficiary and therefore cannot be a third party beneficiary.[5] (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685]; *Spinks, supra*, 171 Cal.App.4th at p. 1022.)

---

[4] An action also may be commenced to determine the validity of any rule or action by the legislative body to punish or otherwise discourage the expression of a member of the legislative body, to compel the legislative body to audio record its closed sessions if a violation of certain Brown Act provisions is established, or to determine that an action taken by the legislative body in violation of the Brown Act is void. (Gov. Code, §§ 54960, subds. (a) & (b), 54960.1.)

[5] "As used in Civil Code section 1559, the 'word "expressly . . ." ' . . . has now come to mean merely the negative of "incidentally." ' " (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1022 [90 Cal.Rptr.3d 453] (*Spinks*).)

■ For purposes of determining whether a third party is an intended beneficiary, the relevant intent is that of the promisee, and it is sufficient if the promisor understood that the promisee had that intent. (*Lucas v. Hamm, supra*, 56 Cal.2d at p. 591; *Spinks, supra*, 171 Cal.App.4th at p. 1023.) "Thus, a third party will qualify as an intended beneficiary where 'the circumstances indicate that the promisee' . . . 'intends to give the beneficiary the benefit of the promised performance.' " (*Spinks, supra*, at p. 1023, quoting Rest.2d Contracts, § 302, subd. (1)(b).)

■ We interpret a contract so as to give effect to the mutual intention of the contracting parties at the time the contract was formed. (Civ. Code, § 1636.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (*Id.*, §§ 1639, 1647.) ■ We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation. (*Id.*, § 1641.) We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.*, § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.*, § 1638.)

Fourteen of the contracts identified in discovery stated that if Options received public funds in connection with the contracts it must comply with the Brown Act "to the extent of the publicly funded program." Those contracts stated further that its board meetings must be open to the public, with limited exceptions, and that minutes of the open meetings must be available to the public. The provisions of California Code of Regulations, title 5, former section 18015, incorporated in four other contracts were substantially the same. We construe all of these contractual provisions to mean that notwithstanding the facts that Options is not a "local agency" and its board of directors is not a "legislative body" as defined in the Brown Act (as discussed *post*), Options agreed to comply with the requirements of the Brown Act in all respects relating to the board's discussion or consideration of any publicly funded programs.[6]

We believe that the purpose of the provisions requiring compliance with the Brown Act was to ensure that meetings of Options's board of directors

---

[6] Options's obligation to comply with the Brown Act was established by contract, rather than by regulation. When the language of a statute or regulation is incorporated in a contract, such language establishes contractual rights and obligations apart from its legal identity as part of a statute or regulation. (*300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1256 [75 Cal.Rptr.3d 98].) The repeal of California Code of Regulations, title 5, former section 18015 therefore did not negate the parties' contractual rights and obligations.

relating to publicly funded programs would be open to the public and to extend to the general public the right to be informed regarding the matters to be discussed at such meetings and other Brown Act protections. We conclude that the intended beneficiary of these contractual provisions was the general public. A member of the public may enforce these provisions as a member of the class for whose benefit the contract was made. The enforcement of such a provision in a government contract should not depend on action by the public agency, which may have little incentive to enforce the provision. (*Zigas v. Superior Court* (1981) 120 Cal.App.3d 827, 841 [174 Cal.Rptr. 806].)

*Martinez, supra,* 11 Cal.3d 394, on which the trial court relied, is distinguishable. The defendants in *Martinez* entered into contracts with the federal government to establish manufacturing facilities in a low-income neighborhood and employ residents certified by the government as disadvantaged. The plaintiffs, all certified as disadvantaged, filed a class action for damages alleging that the defendants had received payments pursuant to the contracts but failed to provide employment or wrongfully terminated the jobs provided. (*Id.* at p. 399.) *Martinez* held that the plaintiffs could not maintain an action for damages as third party beneficiaries of the contracts. (*Id.* at p. 407.)

*Martinez* stated that although the plaintiffs were intended to benefit from the contracts, those benefits were intended to serve the larger purpose of improving conditions in the target neighborhood rather than as a gift to individuals. (*Martinez, supra,* 11 Cal.3d at pp. 401, 405–406.) *Martinez* stated further that the contracts were not intended to confer on the plaintiffs a right to recover damages against the defendants.[7] Instead, provisions establishing administrative procedures to resolve contract disputes and liquidated damages indicated that any contractual disputes were to be resolved through administrative procedures and that the defendants' liability was limited. *Martinez* stated that those provisions were inconsistent with an intent to confer a right on the plaintiffs to recover damages for breach of contract and instead indicated the absence of such an intent. (11 Cal.3d at pp. 401–403.) *Martinez* concluded that absent an intent to make a gift to the plaintiffs or an intent to

---

[7] *Martinez, supra,* 11 Cal.3d at pages 401–402, followed the rule stated in section 145 of the Restatement of Contracts that a government contractor under a contractual obligation to render services to members of the public can be liable for damages to members of the public only if the contract, as interpreted in light of the surrounding circumstances, evidences an intent to provide such a right to recover damages. Similarly, section 313, subdivision (2) of the Restatement Second of Contracts states that a government contractor under a contractual obligation to provide services to members of the public is subject to contractual liability to members of the public for consequential damages only if "the terms of the promise provide for such liability" or "the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach."

confer on the plaintiffs a right to sue the defendants for damages, the plaintiffs were merely incidental beneficiaries. (*Id.* at p. 406.)

 Here, in contrast, the plaintiffs seek to enforce provisions requiring a government contractor to comply with a law that imposes obligations on legislative bodies expressly for the benefit of the general public. (Gov. Code, § 54950.) In our view, absent an indication that the contracting parties intended otherwise, an agreement to comply with the Brown Act indicates an intent to benefit the same persons who would benefit if the act applied directly and an intent to confer a right on those same persons to enforce the Brown Act requirements as contractual obligations.[8] Moreover, the plaintiffs here seek an injunction and declaratory relief, rather than damages. In contrast to *Martinez, supra,* 11 Cal.3d 394, where the plaintiffs sought damages but the contracts indicated that the parties did not intend to confer on the plaintiffs the right to recover damages, the contracts here do not suggest that the parties did not intend to confer on the plaintiffs the rights that they seek to enforce in this litigation, that is, the rights to obtain an injunction and declaratory relief.[9]

Options argues that *Unite Here Local 30 v. Department of Parks & Recreation* (2011) 194 Cal.App.4th 1200 [123 Cal.Rptr.3d 789] (*Unite Here*) compels the conclusion that the public is only an incidental beneficiary and cannot be an intended beneficiary of the contracts. *Unite Here* involved a concession contract between a state agency and private companies resulting from a competitive bidding process. The contract included a provision requiring the agency's consent prior to an assignment and stating that any assignment must comply with Public Resources Code sections 5080.20 and 5080.23 governing concession contracts. Those sections generally require a determination by the State Park and Recreation Commission that the concession satisfies certain statutory requirements and approval by the Legislature, and allow the awarding of a concession contract to "the best responsible person or entity submitting a proposal" (*id.,* § 5080.23, subd. (a)) in response to a request for proposal. The companies assigned the contract to a third party with the agency's approval. (*Unite Here, supra,* at pp. 1204–1206.) A labor union and an individual then sued the agency, the assignors, and the assignee,

---

[8] The Restatement Second of Contracts, section 313, subdivision (1) states that the rules applicable to third party beneficiaries apply to contracts with the government "except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach." We see no indication that such an exception should apply here.

[9] Options did not argue in its motion for summary judgment or summary adjudication that SEIU and Torres are entitled to no injunctive or declaratory relief because the contracts specifically identified in discovery are no longer in effect. Instead, Options appears to acknowledge that its more recent contracts contain similar provisions.

alleging a breach of contract by failure to comply with the statutory requirements incorporated into the contract. (*Id.* at pp. 1206, 1214.) The plaintiffs also alleged that the assignment failed to comply with the statutory competitive bidding requirements. (*Id.* at p. 1206.) *Unite Here* held that because the assignment did not materially amend the contract, the assignment itself was not a concession contract governed directly by the statutory competitive bidding requirements. (*Id.* at pp. 1210–1214.)

*Unite Here* also held that the plaintiffs were not third party beneficiaries of the concession contract. (*Unite Here, supra,* 194 Cal.App.4th at p. 1218.) The court stated that any contract entered into by the state presumably is for the benefit of the state's residents and taxpayers, but that does not make all members of the public intended beneficiaries of the contract. (*Id.* at p. 1215.) *Unite Here* stated that the incorporation of statutes governing concession contracts did not show that the agency intended to benefit a special class of individuals. (*Id.* at p. 1217.) The incorporated statutes in *Unite Here* were not directed toward ensuring openness and facilitating public participation in the decisionmaking process and did not confer standing on potentially affected members of the public. Here, in contrast, the purpose of the Brown Act is to ensure openness in decisionmaking by public agencies and facilitate public participation in the decisionmaking process, and the act confers standing on "any interested person" to commence an enforcement action (Gov. Code, § 54960, subd. (a)). We believe that the benefits extended to members of the public through the contractual incorporation of the Brown Act provisions are neither indirect nor incidental and that the incorporation of provisions of this nature shows an intent to benefit the general public.

Our conclusion is consistent with opinions holding in other circumstances that third parties were members of a class of intended beneficiaries of government contracts and therefore could enforce the contracts as third party beneficiaries. (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1194 [78 Cal.Rptr.3d 572] [held that the employees of government contractors were third party beneficiaries of contracts requiring compliance with a "living wage" ordinance]; *Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1533 [44 Cal.Rptr.2d 862] [held that the employees of government contractors were third party beneficiaries of contracts requiring compliance with a prevailing wage law], disapproved on another point in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 175, 178 [96 Cal.Rptr.2d 518, 999 P.2d 706]; *Zigas v. Superior Court, supra,* 120 Cal.App.3d at pp. 835–840 [held that residential tenants were third party beneficiaries of contracts between landlords and the federal government limiting rents]; *Shell v. Schmidt* (1954) 126 Cal.App.2d 279, 290–291 [272 P.2d 82] [held that veterans were third party beneficiaries of contracts between a builder and the federal government requiring compliance with plans and specifications in the construction of housing for veterans].)

Torres, as a member of the public, is a member of the class for whose benefit the contracts were made and therefore is a third party beneficiary of the contracts and is entitled to enforce the provisions requiring compliance with the Brown Act. Options does not argue and has not shown that SEIU, as a labor organization, has no standing to sue on behalf of its members to enforce a public right. We therefore conclude that the summary judgment in favor of Options on the count for breach of contract was error as to both plaintiffs.

### 4. *Options Cannot Be Sued Directly Under the Brown Act*

The scope of a statute is a question of legislative intent. Specifically, legislative intent as ascertained by statutory construction determines whether a particular person is governed by a statute. An agreement to comply with a statute may be enforceable as a contractual obligation, but such an agreement cannot alter legislative intent or expand the scope of the statute. Such an agreement therefore cannot make directly subject to a statute a person who otherwise is not directly subject to the statute.

The Brown Act requirements at issue here expressly apply only to a "legislative body," as defined in the act. (Gov. Code, §§ 54954.2, subd. (a)(1), 54954.3, subd. (a), 54957.5, subd. (a), 54957.7, subd. (a).) That definition includes, as relevant here, (1) "[t]he governing body of a local agency or any other local body created by state or federal statute" (*id.*, § 54952, subd. (a)); (2) "[a] commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body" (*id.*, § 54952, subd. (b)); and (3) "[a] board, commission, committee, or other multimember body that governs a private corporation, limited liability company, or other entity that either: [¶] (A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity. [or] [¶] (B) Receives funds from a local agency and the membership of whose governing body includes a member of the legislative body of the local agency appointed to that governing body as a full voting member by the legislative body of the local agency" (*id.*, § 54952, subd. (c)(1)).

Options, a private corporation, is not a "local agency" as defined by Government Code section 54951 because it is neither a local public agency nor a board, commission, or agency of a local public agency. Options was privately created and there is no indication that any elected legislative body played any role in bringing the private corporation into existence. Options's board of directors therefore is neither the governing body of a local agency or

other local body created by state or federal statute (*id.*, § 54952, subd. (a)) nor a commission, committee, board, or other body of a local agency (*id.*, subd. (b)), nor is it the governing body of a private corporation or other entity created by an elected legislative body (*id.*, § 54952, subd. (c)(1)(A)).

Finally, no member of Options's board of directors was appointed by a local public agency, so the board is not a "legislative body" within the definition set forth in clause (B) of section 54952, subdivision (c)(1).

We therefore conclude that Options's board of directors is not a "legislative body" subject to the Brown Act. Options is contractually obligated to comply with the Brown Act, and a third party beneficiary can sue to enforce that contractual obligation, but Options cannot be sued directly under the Brown Act. Accordingly, the summary judgment in favor of Options was proper as to the count for violation of the Brown Act, and the denial of the motion for summary judgment by SEIU and Torres was proper as well.

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate the order granting summary judgment in favor of Options and enter a new order denying Options's motion for summary judgment, granting its motion for summary adjudication on the count for violation of the Brown Act, and denying its motion for summary adjudication on the count for breach of contract. Each party must bear its own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.