Filed 12/19/13  Walnum v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANN WALNUM, | B244096 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS133193) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents; | |
| AUTRY NATIONAL CENTER OF THE AMERICAN WEST, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ann I. Jones, Judge.  Affirmed.

The Law Office of Daniel Wright and Daniel E. Wright for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Laurie Rittenberg, Assistant City Attorney, Gabriel S. Dermer, Deputy City Attorney, for Defendant and Respondent City of Los Angeles.

Alston & Bird, Edward J. Casey and Neal P. Maguire for Real Party in Interest and Respondent.

\* \* \* \* \* \*

Ann Walnum (appellant) appeals from a judgment denying her verified petition for writ of mandate and declaratory and injunctive relief against respondents the City of Los Angeles (the City) and its Board of Recreation and Park Commissioners (the Board) for alleged violations of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.)[1] and the City's City Charter. The petition challenged, among other things, a special meeting conducted by the Board in which respondent the Autry National Center of the American West (Autry Center) was granted approval to renovate spaces within its Museum of the American West (museum). We affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 1987, the City approved a 50-year ground lease agreement with the Autry Center for construction and operation of the museum. The lease authorized the museum to occupy approximately 12.75 acres of land located in the northeast portion of Griffith Park for the construction and operation of the museum. Under the terms of the lease, the museum is required to obtain the Board's approval prior to construction of modifications to the museum structure for renovations in excess of $25,000 for internal modifications or $5,000 for external modifications.

Appellant is a property owner in the City of Los Angeles and founder of the Friends of the Southwest Museum Coalition (Coalition). The Coalition is an advocacy group which seeks to hold the Autry Center accountable for merger commitments it made to rehabilitate and continue the land use of the historic Southwest Museum at its Northeast Los Angeles location in the community of Mount Washington/Highland Park. According to the petition, appellant is concerned with potential negative environmental and policy impacts associated with ongoing efforts of the museum to move the land uses of the Southwest Museum from its National Register of Historic Places location in Mount Washington to the basement of the museum in Griffith Park. A number of California

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

2

residents are opposed to the museum's ongoing efforts to abandon the historic Southwest Museum site rather than rehabilitating it for continued public service. In 2009, protests were made against the museum's efforts to expand the Griffith Park museum building to move the entire Southwest Museum into an expanded Autry Museum.

On May 4, 2011, the Board held a regularly scheduled meeting. At the end of the regular meeting, Barry Sanders, the President of the Board (Board President), stated that he would be absent for the scheduled May 18, 2011 regular meeting. Another commissioner also stated that she would not be available for the May 18, 2011 meeting. Because it appeared that it would be difficult to have a quorum for the next meeting, President Sanders directed the Board's staff to poll the other commissioners to confirm a quorum for that meeting. If no quorum was available, staff was directed to determine when a quorum would be available for a meeting on a different nearby date in May 2011 at Cheviot Hills Recreation Center.

On May 5, 2011, Mary Alvarez, the Board's executive assistant (executive assistant), sent an e-mail to the commissioners to determine their availability to attend a Board meeting on May 20, 2011. Three commissioners, including the Board President, in a reply to all, confirmed that they would be available on May 20, 2011. The executive assistant stated by e-mail that a quorum was confirmed for May 20, 2011. She further stated that, unless she was advised otherwise, the Board's next meeting would be May 20, 2011.

On May 9, 2011, the Board posted a notice of cancellation of the regular meeting scheduled for May 18, 2011 at four places: the Board's downtown Los Angeles office; the Board's usual meeting location (the EXPO Center); the special meeting location (Cheviot Hills); and City Hall East.

On May 16, 2011, the executive assistant e-mailed a draft agenda for the May 20, 2011 special meeting to the Board President for his review and approval. The notice and agenda of the May 20, 2011 special meeting were sent by courier to the Board President and the commissioners.

3

On May 18, 2011, the notice for the May 20, 2011 special meeting was posted at the four locations listed above. Board Report No. 11-129 of the General Manager's Report was "Griffith Park-Autry National Center-Renovation of Existing Exhibit Space at the Museum of the American West." The City's Early Notification System did not provide electronic notice of the May 20, 2011 special meeting to its subscribers.

On May 20, 2011, the Board held a special meeting to consider a report of the General Manager, Board Report No. 11-129. The report sought approval of renovations of existing exhibits in the galleria, the outdoor area and restrooms at the museum. The Board approved the report at the May 20, 2011 special meeting. After the Board approved the report, the matter was considered at four different publicly held noticed meetings by the Los Angeles City Council (City Council). Appellant attended and participated in all four of those meetings and filed written comments and objections. On June 21, 2011, the City Council voted to uphold the Board's actions.

On August 3, 2011, appellant filed a verified petition for writ of mandate and for declaratory and injunctive relief. The petition challenged the Board's public meeting procedures generally and specifically as to the May 20, 2011 special meeting. The petition alleged that the Brown Act only authorized the presiding officer or a majority of the legislative body to "call" a special meeting. The call must be a written and signed document. The call and notice of the business must be sent to other members of the body and certain members of the press, and publicly posted at least 24 hours in advance of the special meeting. According to the petition, no interested member of the public attended the May 20, 2011 special meeting because the Board's practices violated the Brown Act and failed to provide adequate notice. The petition alleged: the May 18, 2011 posted notice was less than 72 hours prior to the start of the May 20, 2011 special meeting; the notice did not include a "call" of the special meeting; on information and belief, the Board's post of the special meeting agenda on its Web site was less than 24 hours prior to the start time of the special meeting; no "call" of the special meeting was posted on the Web site; and the agenda of the special meeting failed to give to the public adequate notice that the Board intended to take action to approve anything.

4

In addition, the petition alleged that the City created an Early Notification System for meeting agendas that proactively sends notices of the City Council and the Board meetings and agendas to members of the interested public. When the Board posts a meeting agenda at its physical location, its staff is responsible for uploading the Board's meeting notices and agendas to the system which forwards e-mails to subscribers of the system. No subscribers were notified of the May 20, 2011 special meeting through the system.

In the first cause of action, appellant sought a writ of mandate invalidating the project approvals adopted on May 20, 2011 on the ground the Board failed "to issue or post a 'call' of the special meeting." The second cause of action sought a writ of mandate and declaratory and injunctive relief for the Board's alleged pattern and practice of ignoring the "call" requirement. The third cause of action sought the same remedies for the Board's alleged routine pattern and practice of conducting special meetings "concurrently with, immediately before, or immediately after" a regular meeting.

In support of the petition, appellant produced evidence showing an ongoing dispute between the museum and some members of the public over the museum's operation of the Southwest Museum. This included the 2009 attempt to renovate the museum.

Appellant argued that the May 20, 2011 special meeting was invalid because the Board President did not "call" the meeting as required by the Brown Act. According to appellant, section 54956 of the Brown Act imposes a number of "non-delegable" duties on the legislative body in calling a special meeting. As a result, only the presiding officer or a majority of the legislative body can: (1) call the meeting; (2) deliver the call and notice to the other legislative body members; (3) notify other interested members of the press; and (4) physically post the call and notice of a special meeting.

Appellant also argued the Board violated Los Angeles City Charter section 907, which imposes a higher notification standard than the Brown Act requires by implementing an Early Notification System by the City. Appellant's claim was that she relied on her friends who in turn relied on the system to receive notice of agendas.

5

However, the Board did not utilize the system for the May 20, 2011 special meeting so the decision had to be nullified.

Appellant also claimed that deposition testimony by the executive assistant showed a pattern and practice of violating the Brown Act through the procedures utilized in this case. Appellant argued injunctive relief against the Board was warranted to restrain the Board from its pattern and practice of conducting regular and special meetings during the same meeting.

In opposition to the petition, the Board President filed a declaration. He declared, at the end of the Board's May 4, 2011 meeting, he discovered that he and at least one other commissioner of the Board would not be available for the regular meeting scheduled for May 18, 2011. He then directed staff to poll the other commissioners to confirm a quorum for the May 18, 2011 meeting. If the quorum was not possible, staff was directed then to determine when a quorum would be available on another date in May 2011. Throughout his tenure as Board President, there had been no special meetings of the Board unless he called them. He had received and he believed all other commissioners have always received proper notice of the meetings.

The executive assistant described her duties as a Board employee. Her responsibilities included supervision of staff concerning the duties of the office. Board staff prepared agendas, notices and minutes of Board meetings. The staff is responsible for notifying the commissioners and public of the agendas. She confirmed that on May 4, 2011, the Board President directed staff to poll the other commissioners about a quorum for the May 18, 2011 regular meeting. The Board President directed staff that, if no quorum was available, to determine when a quorum would be available in May. The staff delivered the special agenda to all Board commissioners on May 18, 2011. Notice of the May 20, 2011 meeting was posted in four public locations.

The executive assistant further declared that, when there is a special meeting and regular meeting on the same day, the Board considers the special agenda items separate and apart from the regular agenda items. She declared: "The two meetings are conducted one after the other, not concurrently or simultaneously. Once the special

6

meeting is called, only matters on the special meeting's agenda are discussed; no other business is conducted until the special meeting is adjourned." She denied that staff calls special meetings. She simply handles the administrative portion of the special meetings. The staff prepares agendas and submits them to the Board President for approval. She, too, was unaware of a commissioner missing a regular or special meeting due to lack of notification. She had been informed that the Early Notification System did not notify subscribers of the May 20, 2011 special meeting.

The Autry Center filed a brief which reiterated the procedures followed by the Board in conducting the May 20, 2011 special meeting. In addition, the Autry Center noted that in granting consent on May 20, 2011 for the proposed renovations, the Board also determined that the renovations were not subject to the California Environmental Quality Act (CEQA).

On May 31, 2011, the City Council held a publicly noticed meeting and asserted jurisdiction over the Board's consent for the renovations. City Council members stated they wanted the public to have another opportunity to comment on the proposed renovations because the Early Notification System had malfunctioned. The matter was referred to the City Council's Arts, Parks, Health and Aging Committee (Committee), which held a publicly noticed meeting on June 3, 2011 to consider the Board's consent for the renovations. After appellant appealed the CEQA determination, the Committee held a public meeting on the consent and CEQA determination. On June 21, 2011, at a publicly noticed meeting, the City Council upheld the Board's actions. The CEQA determination is on appeal in a separate matter.

The trial court denied the mandate petition. The court began by indicating that appellant's references to years of discord between the Coalition and the museum were irrelevant to the issue of whether the Board complied with the Brown Act regarding the May 20, 2011 special meeting. The court then concluded that the Board substantially complied with the Brown Act's requirements. The court rejected appellant's claims that section 54956 required the presiding member of the legislative body to call a special meeting "by personally preparing and distributing a call and notice." The decision to call

7

the special meeting was made indirectly by the procedure taken by the Board President on May 4, 2011 when he inquired about the inability to establish a quorum on May 18, 2011. The executive assistant then acted in conformity with the Board President's instructions to set a special meeting on the first available date when a quorum could be obtained. The court concluded that the protocol, while perhaps not the "'best practice,'" actually and substantially complied with the Brown Act.

The trial court then rejected arguments by appellant that the Board President was required to personally deliver written notice to each member and to interested media outlets or post the notice in a freely accessible public location. The trial court concluded there was no evidence the Board failed to comply with the Brown Act in setting the May 20, 2011 special meeting. There was also no competent evidence that there was a pattern and practice of allowing the executive assistant to call special meetings. The Board did not violate section 907 of the Los Angeles City Charter, which only refers to the Department of Neighborhood Empowerment. It does not require electronic notification or posting of agendas of the Board's meetings. The trial court entered judgment on July 23, 2012 denying the mandate petition and requests for declaratory and injunctive relief. This timely appeal followed.

## DISCUSSION

### I. Mandate and Review Standards

Code of Civil Procedure section 1085 subdivision (a) provides: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person." For a writ to issue, two requirements must be met: (1) a clear, present and usually ministerial duty upon the part of the respondent; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925; *Unnamed Physician v. Board of*

*Trustees* (2001) 93 Cal.App.4th 607, 618.)  But, mandamus does not lie to control a body's exercise of its discretion in a particular manner.  (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002; *Morris v. Harper* (2001) 94 Cal.App.4th 52, 62.)  An appellate court applies a deferential standard of review to determine whether the findings and judgment are supported by substantial evidence, however, questions of law are independently reviewed when the facts are undisputed.  (*Inglewood Redevelopment Agency v. Aklilu* (2007) 153 Cal.App.4th 1095, 1114; *Armando D. v. State Dept. of Health Services* (2004) 124 Cal.App.4th 13, 21.)

## II.      The Brown Act Requirements

The Brown Act facilitates public participation in the public decision and also curbs the misuse of the democratic process through secret legislation.  (*Service Employees Internat. Union, Local 99 v. Options–A Child Care & Human Services Agency* (2011) 200 Cal.App.4th 869, 877.)  To accomplish this goal, the Brown Act requires public agencies to take their actions and conduct their deliberations "openly."  (§ 54950.)  The Brown Act provides for three types of meetings:  regular meetings requiring 72 hours notice in a location freely accessible to the public (§ 54954.2); special meetings which may be called at any time but require 24 hours notice (§ 54956); and emergency meetings which may be called in rare cases on one-hour notice to interested media outlets (§ 54956.5).  While courts may declare null and void actions taken in violation of the Brown Act, a violation does not necessarily invalidate the agency's action.  (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1409–1410.)  Rather, the party challenging the agency action must show prejudice.  (*Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 670–671.)  Moreover, section 54960.1, subdivision (d)(1) provides that a court shall not determine an action taken in violation of the Brown Act to be null and void if the action taken was in substantial compliance with section 54956.

### A.      *The Board did not violate the Brown Act.*

The special meeting requirements are set forth in section 54956, subdivision (a). The statute provides:  "(a) A special meeting may be called at any time by the presiding

officer of the legislative body of a local agency, or by a majority of the members of the legislative body, by delivering written notice to each member of the legislative body and to each local newspaper of general circulation and radio or television station requesting notice in writing and posting a notice on the local agency's Internet Web site, if the local agency has one.  The notice shall be delivered personally or by any other means and shall be received at least 24 hours before the time of the meeting as specified in the notice.  The call and notice shall specify the time and place of the special meeting and the business to be transacted or discussed.  No other business shall be considered at these meetings by the legislative body.  The written notice may be dispensed with as to any member who at or prior to the time the meeting convenes files with the clerk or secretary of the legislative body a written waiver of notice.  The waiver may be given by telegram.  The written notice may also be dispensed with as to any member who is actually present at the meeting at the time it convenes.  [¶]  The call and notice shall be posted at least 24 hours prior to the special meeting in a location that is freely accessible to members of the public."  (§ 54956, subd. (a).)  Effective January 1, 2012, section 54956 was amended to add subdivision (c) to require that the agenda be posted on the local agency's Internet Web site, if the local agency has one.  (Stats. 2011, ch. 692, § 9.)

Appellant claims section 54956 must be interpreted to mean the Board violated the Brown Act when it designated the tasks of e-mailing the commissioners about the May 20, 2011 special meeting to the executive assistant.  According to appellant, the e-mail procedure did not result in a "calling" of the meeting because the "presiding officer" did not do so in writing.  Appellant states the statute requires "the call and notice of items of business must be delivered and posted publicly as objective and manifest evidence of the act of calling the special meeting."  Appellant further asserts the Board then improperly delegated to staff the task of notifying commissioners, the press, and public posting of the special meeting.  We disagree.

We decline to interpret the statute in the manner suggested by appellant because section 54956 clearly and plainly states only that a special meeting may be "called" by the "presiding officer."  (See *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165.)

10

The record shows that at a regular meeting on May 4, 2011, the Board President directed staff to determine whether a quorum would be available for the regular meeting on May 18, 2011.  If no quorum was available on that date, staff was directed to determine when a quorum would be available on a nearby date in May 2011.  The executive assistant followed up with the Board President's decision to hold the special meeting by e-mailing individual commissioners to determine the first date when a quorum could be established.  Thus, the trial court correctly concluded that the procedure did not violate section 54956 because the Board President is the party who decided to call the special meeting in the event there was no quorum available for the next regularly scheduled meeting.  Staff merely facilitated the Board President's direction to have the special meeting on the first date a quorum could be established in May 2011.  This was substantial if not actual compliance with section 54956.  We need not interpret the statute in the expansive manner suggested by appellant because the statute clearly sets forth the requirements for calling a special meeting, which the Board met.

Similarly lacking in merit is the claim that section 54956 must be interpreted to require the presiding officer of a legislative body to personally engage in the administrative tasks of posting notices and service on other members of the legislative body and members of the press.  Section 54956, subdivision (a) specifies:  "The notice shall be delivered personally *or by any other means* and shall be received at least 24 hours before the time of the meeting as specified in the notice."  (Italics added.)  Thus, nothing in section 54956 requires personal service by the "presiding officer" or precludes delegation of the task to staff.  For that reason, appellant is incorrect that language in section 54954.2, subdivision (a)(1) regarding regular or emergency meetings in section 54956.5 requires a different result.  Section 54954.2, subdivision (a)(1) provides that "[a]t least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda . . . ."  Section 54956.5 contains similar language concerning a "designee."  It is of no consequence that section 54956 does not contain "designee" language because it states that service may be personal or "by any other means."

11

We also disagree with appellant that *City of Orange v. Clement* (1919) 41 Cal.App. 497 (*City of Orange*), which was not a Brown Act case, requires a different result. *City of Orange* concerned an alternative writ of mandate issued which required the treasurer of the city to pay a warrant for a land purchase by the city for use of as a city hall. (*Id*. at p. 497.) The petitioner in that case, *City of Orange*, alleged that a special meeting had occurred which authorized the purchase of the land. (*Id*. at pp. 497–498.) However, based on the evidence presented in the appellate court, it was determined that no written notice of a special meeting was delivered to any member of the board of trustees and one member of the board of trustees was absent from the meeting. (*Id*. at pp. 498–499.) *City of Orange* concluded that the meeting and all proceedings thereof were void. (*Ibid*.) This case is distinguishable because the record establishes that each commissioner in this case was given personal notice of the May 20, 2011 special meeting. Moreover, this case involves the Brown Act whereas *City of Orange* did not.

Under the circumstances, appellant has failed to establish a Brown Act violation regarding the May 20, 2011 special meeting. So, the trial court correctly refused to grant the petition as to the first cause of action.

### B.      *The Board did not violate the City Charter.*

There is also no merit to appellant's claim the Board violated section 907 of the Los Angeles City Charter by failing to post a notice through its Early Notification System, which purportedly provides more protection than the Brown Act. (See § 54953.7 [providing local agencies may impose requirements on themselves which allow greater access to meetings than the minimal standards in the Brown Act].) The system, however, applies to the Department of Neighborhood Empowerment. There is no indication that the Board or the City imposed a requirement of e-mailing the Board's agendas or posting notifications through this system. Thus, appellant cannot prevail on this issue.

### C.      *There was no competent pattern and practice evidence.*

Appellant also claims the trial court should have granted relief because the evidence established the Board violated the Brown Act by its practices of conducting "concurrent" regular and special meetings on the same date. The opening brief contains

12

numerous painstaking and conclusory descriptions of various aspects of the Board's patterns and practices concerning special and regular meetings which are scheduled on the same day.[2] However, we note that most of these arguments were not fully developed in the trial court.

The executive assistant provided evidence that the Board held special and regular meetings on the same date. However, the executive assistant also declared that, when there is a special meeting and regular meeting on the same day, the Board considers the special agenda items separate and apart from the regular agenda items. She declared: "The two meetings are conducted one after the other, not concurrently or simultaneously. Once the special meeting is called, only matters on the special meeting's agenda are discussed; no other business is conducted until the special meeting is adjourned." Given this evidence, the trial court did not err in its conclusions that there was no competent evidence of any pattern or practice of violating the Brown Act.

Furthermore, contrary to appellant's suggestion otherwise, neither section 54956 nor section 54952.2 precludes special and regular meetings from occurring on the same day. Section 54956 permits a special meeting to be "called" at "any time" on 24-hour

[2] Appellant's opening brief contains a number of superfluous and immaterial matters concerning the acrimonious history between appellant's various coalitions and the Autry Center as to the operation of the museum and the Southwest Museum. Moreover, the opening and reply briefs contain extraneous matters. We have had to decipher and condense the matters to their simplest forms to decide the pertinent issues on appeal. Those issues are: was there a violation of the Brown Act on May 20, 2011 and did appellant establish a pattern and practice of violating the Brown Act? For these reasons, we decline to judicially notice the eight-volume legislative history lodged with the record on appeal, which is irrelevant to our resolution of the pertinent issues on appeal. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

In a separate order, we denied appellant's judicial notice request of documents in an unrelated case which purportedly established the trial court's animus against appellant's counsel in this case. Appellant asserts in her opening brief that the animus resulted in unfavorable rulings on the merits of her petition as well as on the evidence. We do not consider these claims, which have been raised for the first time in the appeal. (*People v. Scott* (1997) 15 Cal.4th 1188, 1207; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218.)

13

notice. Nothing in either the special meeting statute or the regular meeting statute prohibits an agency from having the meetings on the same date.

### D. The trial court did not err in its evidentiary rulings.

Appellant also asserts the trial court erred in a number of evidentiary rulings. The trial court's evidentiary rulings are reviewed for an abuse of discretion. (*People v. Hamilton* (2009) 45 Cal.4th 863, 929–930.)

Appellant claims the trial court erred by failing to address the issue of the executive assistant's testimony as substantial evidence in the record. We need not consider this argument which was not fully developed in appellant's opening brief but rather was only developed in the reply brief. (*Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1329, fn. 5; *Dills v. Redwood Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

Appellant argues the trial court erred in its evidentiary rulings regarding declarations submitted by the executive assistant and several other parties to the extent they established the context of the dispute, a motive by the Board, and prejudice. Again, there are no specific claims raised concerning the 90 separate evidentiary rulings addressed to appellant's declarations. We note only that some of the declarations address the Early Notification System and the fact that it was not working for the May 20, 2011 special meeting. There was no dispute the system was not working on the date in question so we are unable to find an abuse of discretion as to the exclusion of this evidence. The declarations also outline the history of the disputes between various groups and the Museum. The trial court's determination that evidence concerning the history of acrimony between the parties was irrelevant to the Brown Act compliance was not an abuse of discretion.

In addition, appellant asserts the trial court erred in its evidentiary ruling refusing to consider a declaration by Terry Francke, general counsel of Californians Aware, concerning his purported expert views on the Brown Act. The trial court excluded the declaration on the grounds it offered nothing more than legal conclusions which was in the trial court's province to decide. "'[I]t is thoroughly established that experts may not

14

give opinions on matters which are essentially with the province of the court to decide.'" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884.) We have examined the Francke declaration and conclude the trial court acted well within its discretion to exclude the opinion which purported to resolve the legal issues before the trial court. (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841–842.)

The trial court also acted within its discretion to exclude materials in appellant's judicial notice request of documents including a docket sheet from an unrelated Superior Court action, *South Central Farmers Action Fund v. City of Los Angeles*, case No. BS117561. According to appellant, the documents would have established that the City and the Los Angeles City Attorney "have for years been on notice of potential infirmities with its special meetings." The trial court acted within its discretion to refuse judicial notice of a ruling and docket sheet in an unrelated matter. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418.)

Appellant also claims the trial court erred in considering appellant's discovery admissions that she did not check the posted notice for the May 20, 2011 special meeting, was not a subscriber to the Early Notification System and did not have Internet access. Appellant also claims the trial court should not have considered evidence concerning her participation at the City Council meetings which upheld the Board's action because only the Board could cure its violations. She further asserts that the documents establishing the City Council's four subsequent meetings were improperly admitted. The trial court overruled appellant's relevancy objections to the admission of this evidence. Appellant has failed to demonstrate that the trial court's admission of this evidence exceeded the bounds of reason or resulted in a miscarriage of justice. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) The parties raised the issue of whether appellant was prejudiced by the May 20, 2011 meeting. The evidence established that appellant appeared at the subsequent City Council meetings where she was allowed to participate and raise her objections. Although the trial court ultimately declined to reach the prejudice issue, it did not exceed the bounds of reason to admit the evidence.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.